# HENRY J. DECKER *et al.*

## *v.*

# JAMES W. HUGHES *et al.*

1. CORPORATE SUBSCRIPTION—*whether governed by the old or new constitution.* Where the vote on the question of a corporate subscription to the capital stock of a railway company was had, and the subscription made prior to the adoption of the present constitution, the old constitution must govern, although the corporate bonds were not actually issued until after the adoption of the new constitution.

2. SAME—*authority to make subscription.* Where an act of the legislature authorized the city of Belleville to issue bonds, and apply the proceeds as subscription to the stock of any railroad leading to or from that city, and prescribed the particular mode and conditions of the exercise of the power, and in another section declared that the act should apply and be in force for the use and benefit of the town of Mascoutah: *Held,* that the act gave the town the same power to make a corporate subscription as it did the city, upon the same terms and conditions, the same as if the language had been repeated.

3. SAME—*whether a vote authorizing an appropriation will authorize a subscription.* Where a town was authorized to vote a subscription to the stock of any railway company whose road should lead to or from it, a vote was had on the question for or against railroad appropriation in a certain amount, which carried, and under which the corporate authorities subscribed the sum named to the stock of a railway company: *Held,* that although the scope of the vote was larger than was warranted, as justifying a donation, yet as the sum voted was *appropriated* as a subscription to stock, it would be sustained.

4. SAME—*whether the vote must name the company to which subscription is to be made.* Where the law under which a vote was taken on the question of corporate subscription, did not require the same to be taken in reference to the stock of any particular road, but was in general terms to any railroad leading to or from the town, a vote of a certain sum for railroad subscription without designating any particular road, was held to authorize a corporate subscription to a road which passed through the town.

5. SAME—*disposition of bonds.* Under authority to issue corporate bonds and apply their proceeds as subscription to railroad stock, the railroad company may take the bonds themselves at par in exchange for stock.

6. SAME—*dependent on a vote of a majority of tax-payers.* Where a corporate subscription was only authorized upon a majority of the tax-payers

3—68TH ILL.

of the town voting for the same, and the call of the first election was one of tax-payers only, and the second call for an additional subscription was general, but the returns showed 255 votes for, and only 28 against the proposition, and the ordinance subsequently adopted, authorizing the subscription, and fixing its terms and conditions, recited that the two amounts were voted for by the legal voters of the town, and the sworn certificate of the president to the auditor, for the purpose of having the bonds registered, declared that the bonds were issued under the act governing the vote: *Held,* on bill to enjoin the collection of taxes to meet the interest on the bonds, the bill failing to charge that a majority of the tax-payers did not vote for the subscriptions, that it would be presumed that a majority of the tax-payers did vote in favor of the subscriptions.

7.  STATUTES—*rule of construction.* It is a rule of interpretation that such construction ought to be put upon a statute as may best answer the intention which the makers had in view; and also, that a statute ought to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant.

8.  TAXATION—*who must levy corporate taxes.* The State Auditor has the rightful authority, under both the old and new constitutions, to levy and certify the taxes of a municipal corporation to meet the interest on their bonds which are duly registered in his office under the act of April 16, 1869.

9.  SAME—*constitutional restrictions.* While it is true that it rests with the citizens or corporate authorities of counties, townships, cities and towns to determine whether they will incur a debt or levy taxes for corporate purposes, yet the legislature is left free to select the agents who shall impose and collect the tax, when such indebtedness or taxes are voluntarily incurred.

10.  SAME—*to meet interest before due.* Where taxes are levied to pay interest on corporate bonds, it is no valid objection to the tax, that the interest is not yet due, especially when, if they were levied the following year, they could not be collected in time to meet the interest.

11.  REGISTRATION OF CORPORATE BONDS. It was objected to the certificate of the president of a town, made to entitle the bonds of the town to be registered, that it was not sufficient, for the reason that it was not positive, but to the best of the officer's knowledge and belief: *Held,* that as the certificate was required to be made under oath, it was sufficient, as the officer could not know all the facts to a certainty, and it would be unreasonable to require him to swear positively to such facts.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was a bill in chancery, brought by the plaintiffs in error, with others, as residents and tax-payers of the town of Mascoutah, St. Clair county, in the circuit court of that county, to enjoin the collection of certain taxes levied for the purpose of paying the interest on $50,000 in bonds registered in the Auditor's office, issued by the town of Mascoutah, to the St. Louis and Southeastern Railway Company, in payment of a subscription of that amount by the town to the capital stock of that company.

The bill sets forth the following circumstances under which the bonds were issued and the taxes assessed, and claims that it appears therefrom that the bonds were issued and the taxes assessed without any lawful authority.

By an act of the legislature, passed March 5th, 1867, (Private Laws 1867, vol. 1, p. 841,) entitled "An act to authorize the city of Belleville and the town of Mascoutah to issue bonds," it was enacted,

" Sec. 1.    That the city council of the city of Belleville, of the county of St. Clair, State of Illinois, may authorize the mayor and register to issue bonds in such amounts as the said city council may determine upon by ordinance, payable in not less than ten years nor more than twenty years, and bearing ten per cent interest per annum.    The proceeds of said bonds shall be applied as subscription to stock of any plank, McAdam or railroad now being built, or hereafter to be built, leading to or from the city of Belleville.    Said bonds shall not be sold or disposed of for less than par; and *provided further*, that no such bonds shall be issued unless a majority of the tax-payers to whom the question shall be submitted shall have decided in favor thereof.

"Sec. 2.    This act shall also apply to and be in force for the use and benefit of the town of Mascoutah, in the county of St. Clair."

At a meeting of the president and board of trustees of the town of Mascoutah, held on the 6th day of May, 1867, the following resolution was passed:

"*Resolved*, That an election be held of the tax-payers of the town of Mascoutah, to vote for or against railroad appropriation, authorized by an act entitled 'An act to authorize the city of Belleville and the town of Mascoutah to issue bonds,' approved March 5, 1867, and that the amount that may be so appropriated shall not exceed twenty thousand dollars."

At another meeting of the board, held on the 10th day of May, 1867, it was

"*Resolved*, That the election ordered in last meeting be held June 8th, 1867, and that the clerk have 500 election tickets printed, the votes to be 'For Railroad Appropriation,' 'Against Railroad Appropriation,' and to order fifty posters to be stuck up in said town, giving notice of said election, in both languages."

The board held another meeting on the 2d day of September, 1867, at which "the poll books of the election held June 8, 1867, for or against railroad appropriation, were received, and upon examination it was found that 218 votes were cast for, and 50 votes against appropriation."

At another meeting of the board, held on the 7th day of June, 1869, it was

"*Resolved*, That an election be held July 5, 1869, in C. Lischer's office, to vote for or against subscribing additional thirty thousand dollars to any railroad leading to or from Mascoutah; this being in addition to the twenty thousand dollars already voted upon; and the clerk to post up notices of said election, and notify the board of registry."

On the 8th day of July, 1869, the board held a meeting, and made this record of their proceedings, to-wit:

"The poll book of the election held July 5, for subscribing $30,000 additional to railroads, was then examined, and found that, for subscription received 255 votes, against subscription received 28 votes; and on motion of Mollman, it was *resolved*, that the poll books be approved."

At a meeting of the board, held on the 3d of January, 1870, the following ordinance was adopted:

"*An ordinance for securing to the town of Mascoutah the benefit to be derived from the construction and operation of the St. Louis and South Eastern Railway.*

"Section 1.   Be it ordained by the President and Board of Town Trustees of the town of Mascoutah, That the twenty thousand dollars voted for railroad purposes by the legal voters of the town of Mascoutah on the 8th day of June, 1867, and additional sum of thirty thousand dollars, voted by the legal voters of said town on the 5th day of July, 1869, for similar purposes (all under an act approved March 5, 1867, authorizing the city of Belleville and town of Mascoutah to issue bonds and make appropriations for railroad purposes,) be subscribed to the capital stock of the St. Louis and South Eastern Railway Company, at par, upon the request of said company, by the president of said board of trustees of the town of Mascoutah, for and in behalf of the people of said town and the legal voters thereof; and when said sum of fifty thousand dollars shall be subscribed, it shall be binding on the said town and the tax-payers thereof, upon the following conditions:

"*First.*   Said railway shall be located and constructed from East St. Louis to Mascoutah, and the track thereof shall be laid on such location not beyond the present survey opposite north or south of Mill street, measured from the point where Market street crosses the said Mill street.

"*Second.*   The said company shall deliver to the board of trustees of said town certificates of the capital stock of said company equal in amount to the said sum of fifty thousand dollars, and whenever regular trains shall be running from East St. Louis to Mascoutah, and a depot is erected within the limits of said town, said company shall be entitled to demand and receive the bonds of said town to the amount of fifty thousand dollars in payment for the said subscription; said bonds shall be in such form, tenor, and for such amount, not exceeding one thousand dollars each, payable at such place

and at such times, not inconsistent with the laws under which they are issued, as may be requested by said company, and shall bear interest at the rate of ten per cent per annum, and shall be valid only if registered by the State Auditor, according to an act entitled 'An act to fund or provide for paying railroad debts of counties, townships, cities and towns,' in force April 16, 1869."

And, thereupon, at the request of the president of the St. Louis and South Eastern Railway Company, the president of the board of trustees of the town of Mascoutah made the subscription on the books of said company.

The following certificate, under oath, appears on file in the office of the Auditor of Public Accounts:

"STATE OF ILLINOIS, COUNTY OF ST. CLAIR,
Mascoutah, Ill., Nov. 14, 1870.

*"To the Auditor of Public Accounts of the State of Illinois, Springfield, Illinois.*

"SIR: I herewith transmit to you for registration in your office, under the provisions of the act entitled 'An act to fund and provide for [paying] the railroad debts of counties, townships, cities and towns,' in force April 16th, 1869, the following bonds, being fifty in number, dated November first, 1870, amounting to ($50,000) fifty thousand dollars, payable on the first day of November, 1890, and bearing interest at the rate of ten per cent per annum, payable annually. These bonds are issued by the town of Mascoutah, in the county of St. Clair, and State of Illinois, to the St. Louis and South Eastern Railway Company, under and by authority of the provisions of 'An act to authorize the city of Belleville and the town of Mascoutah to issue bonds,' approved March 5th, 1867. And I, as president of said town of Mascoutah, do hereby certify that all the preliminary conditions in the act in force April 16, 1869, required to be done to authorize the registration of these bonds, and to entitle them to the benefits of the

said act last referred to, have been fully complied with, to the best of my knowledge and belief.

"VALENTINE LIEBIG,

" President Board of Trustees of town of Mascoutah."

On the 21st of November, 1870, the Auditor made and transmitted to the county clerk of St. Clair county, his certificate, as required by the act of April 16, 1869, of the estimated rate per centum on the valuation of property in said town requisite to meet the interest to become due to November 1st, 1871, on said bonds, and this per centum amount constitutes the taxes sought to be enjoined.   The said act of April 16, 1869, provides that the said per centum shall thereupon (upon the transmission of such certificate to the county clerk) be deemed added to, and a part of, the per centum which is levied by law for purposes of State revenue, and shall be so treated by the clerk in making such estimates and books for the collection of taxes, and that the said tax shall be collected with the State revenue.   The cause was heard on a demurrer to the bill, and the demurrer was sustained and a decree entered dismissing the bill.   The complainants bring this writ of error.

Mr. THOMAS G. ALLEN, and Mr. SHEPARD BARCLAY, for the plaintiffs in error.

Mr. J. M. HAMILL, and Mr. T. S. CASEY, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The principal point made in favor of the reversal of this decree, is the want of authority to issue the bonds in question.

There is no complaint in the bill of the omission of any required condition preliminary to the making of the subscription or issuing of the bonds, or of any irregularity in the exercise of the power to that end, but the claim made is, that there was an entire want of authority under the law, in the

town of Mascoutah, under any circumstances to make the subscription or issue the bonds.

The votes for the subscription were had, and the subscription made, prior to the adoption of the present constitution, although the bonds were not actually issued until after that time.

The constitution of 1848 is, then, to govern, and under that constitution it is abundantly established by decisions of this court, that the legislature had the power to authorize towns to subscribe to the capital stock of railway companies. And we are of opinion that the legislature did confer such authority upon the town of Mascoutah by the act of March 5th, 1867, and that that act furnishes the authority for the exercise of the power in question in this case.

The first section of the act authorizes the city of Belleville to issue bonds and apply their proceeds as subscription to the stock of any railroad leading to or from that city, and prescribes the particular mode and conditions of the exercise of the power. The second section declares that the act shall apply to and be in force for the use and benefit of the town of Mascoutah, in the county of St. Clair.

It seems to be assumed by counsel, in argument, that this second section is without effect because it does not in so many words prescribe how and in what manner the act shall apply to and be in force for the use and benefit of the town of Mascoutah, and that as the act in express terms only empowers the city council of Belleville to authorize the mayor and register of that city to issue bonds, no power in the premises is conferred upon the municipal authorities of the town of Mascoutah. In our judgment, it was sufficient in this respect to say, in general terms, that the act should apply to the town of Mascoutah, and be in force for its use and benefit, without committing the tautology of repeating, in reference to the town of Mascoutah, all the particular provisions of the first section relating to the city of Belleville.

The act was to apply to Mascoutah in the same manner as it applied to Belleville, *mutatis mutandis.* As applied to Mascoutah, it would be for the president and trustees of the town to authorize the president to issue the bonds, they being, as to that town, the corresponding municipal officers to the city council and mayor of the city of Belleville; and the railroad aided would have to be one leading to or from Mascoutah instead of Belleville. With these changes, the literal provisions of the first section of the act would be applicable alike to the town of Mascoutah and to the city of Belleville. It was the plain meaning of the legislature, that the town of Mascoutah should be authorized to subscribe to the stock of any railroad leading to or from that town, in the same manner that the city of Belleville was authorized to subscribe to the stock of any railroad leading to or from that city.

It is a rule of interpretation that such construction ought to be put upon a statute as may best answer the intention which the makers had in view; and also that a statute ought to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant. The narrow and literal construction which plaintiff's counsel would put upon the act would make it wholly inapplicable to the town of Mascoutah, and render nugatory the entire second section of the act. The will of the legislature should have effect, and not be thus defeated by technical construction.

Objection is made that, at the first election at which $20,000 were voted, the vote was for railroad *appropriation,* and that no particular railroad was named to which it was to be applied, as was also the case as respects the last particular, in the second election whereat the $30,000 were voted. The scope of the first vote was larger than the act warranted, as the vote might have authorized a donation of the money.

Had the town authorities made such an appropriation by donation of the amount voted, there would have been just cause of complaint that it was unwarranted by the act. But as

the sum voted was in fact appropriated by way of subscription to stock, as that was one mode of appropriation, and the act authorized a vote for such subscription, we do not see how it matters that the vote was in form for railroad *appropriation* generally.

The act did not require the vote to be taken in reference to subscription to the stock of any particular road, but the act, in this respect, was in general terms to any railroad, without any designation of it, further than that it should be one leading to or from the town. The vote to subscribe to the stock of any railroad, or of any one leading to or from Mascoutah, would authorize the subscription to the stock of this particular road, as it passes through the town. We perceive no force in the objection that the question of subscribing to the stock of this particular railroad was not submitted to a vote. We think it was sufficient to submit the question as to the taking of stock in any railroad leading to or from the town.

Some stress seems to be laid upon the fact that the act only authorized the corporate authorities to issue the bonds and apply their proceeds as subscription to railroad stock.

But surely, if the railway company were willing to accept the bonds themselves at par in exchange for stock, we can see no objection to this being done under the authority given. It would rather be for the benefit of the town, in saving to it the trouble and expense of converting the bonds and applying their proceeds in payment for stock.

It is said, in argument, that it does not appear that a majority of the tax-payers of the town were in favor of the subscription and of issuing the bonds. The bill contains no allegation that such was not the fact.

As respects the first vote for the $20,000, the call for that election by the board of trustees was in express terms of an election to be held of the tax-payers of the town of Mascoutah, and we clearly think it is to be intended that the votes given at that election were those of tax-payers; that they

were the votes of the persons to whom the question voted upon was submitted in the call of the election.

The call of the second election was more general, it being of one to vote for or against a subscription of $30,000 additional.

The large majority of the votes at this election in favor of subscription, there being 255 votes for, and only 28 against it, makes it highly improbable that there should not have been a majority of the tax-payers in favor of subscription.

The ordinance authorizing the subscription recites that the two amounts to be subscribed were voted for by the legal voters of the town of Mascoutah, under the act of March 5, 1867.

The certificate of the president of the board of trustees to the Auditor, of compliance with the preliminary conditions, declares that the bonds were issued under and by authority of the provisions of the said act.    As the act only authorized tax-payers to vote, and provided that the bonds should not be issued unless voted for by a majority of tax-payers, and as it does appear that a large majority of the legal voters did vote in favor of the subscription, we are of opinion, especially after the town has issued the bonds for a valuable consideration, that the presumption should be indulged that a majority of the tax-payers voted in favor of the subscription.

Another point made is, that the Auditor had no rightful authority, under the constitution, to levy the taxes in question; that they only could have been levied by the corporate authorities of the town of Mascoutah.

The taxes were levied by the Auditor under the act of the 16th of April, 1869, (Laws of 1869, p. 318, sec. 4,) to meet the accruing interest on these bonds, which were registered in his office.    This precise question was made and decided in favor of the right of the Auditor to levy such taxes, under the constitution of 1848, by this court, in the case of *Dunnovan et al.* v. *Green,* 57 Ill. 63.

Section 5, article 9, of that constitution was as follows: "The corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes. *　*　And the general assembly shall require that all the property within the limits of municipal corporations belonging to individuals shall be taxed for the payment of debts contracted under authority of law."

It had been repeatedly decided by this court that the first clause of that section forbade the legislature to grant the power to levy taxes for corporate purposes to any other persons than the corporate authorities. *The People ex rel.* v. *Mayor of Chicago,* 51 Ill. 17; *Same ex rel. Wilson* v. *Salomon,* id. 37; *Harward* v. *St. Clair Drainage Co* id. 130; *Lovingston* v. *Wider,* 53 Ill. 302.

And yet it was held, in the above cited case of *Dunnovan* v. *Green,* that, under the second clause of the section, the Auditor was rightly empowered, by the act of April 16, 1869, to levy taxes to meet the interest on the registered bonds of municipal corporations. It was held that there was a broad distinction between the two clauses; that, under the first clause, it rested only with the citizens or corporate authorities of the municipal body to determine whether they would incur a debt or levy taxes for corporate purposes. But that the second clause, that the general assembly should require that all the property within the limits of municipal corporations should be taxed for the payment of debts, etc., was an express authority conferred upon the legislature to cause to be levied a tax to pay any indebtedness lawfully incurred by such a body; and that the levy for such purpose was not required to be made through the corporate authorities, but that the legislature was left free to select the agents who should impose and collect the tax. But it is claimed that the present constitution has annulled the power conferred upon the Auditor by the act of April 16th, 1869, by force of the two additional provisions contained therein, which constitute the

first clause and the last sentence of section 10 of article 9. The entire section is as follows:

"The general assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. Private property shall not be liable to be taken or sold for the payment of the corporate debts of a municipal corporation."

We fail to see how this last provision applies. No such object as is there prohibited is here sought. The proceeding is only to collect the taxes of these complainants—to enforce the payment of their own private debts.

The second clause of sec. 5, art. 9, of the constitution of 1848, that the general assembly should require the property within municipal corporations to be taxed for the payment of their debts, is retained in the present constitution, and is to receive the same construction, for aught that we can perceive, as was put upon it in the case of *Dunnovan* v. *Green*.

By the first clause of sec. 10, art. 9, of the present constitution, the general assembly is prohibited from imposing taxes upon municipal corporations, or their inhabitants, for corporate purposes.

By the first clause of sec. 5, art. 9, of the constitution of 1848, as repeatedly expounded by this court, the general assembly was prohibited from granting the power to assess and collect taxes to any other than the corporate authorities.

It is difficult to see how the legislature could exercise the power to levy taxes except through the instrumentality of agents; and in their bearing upon the point under consideration, we can perceive no essential difference between these respective prohibitions in the two constitutions. The prohibition in the present constitution, that the legislature should

not impose taxes upon municipal corporations or their inhabitants for corporate purposes, would seem to be but the adoption of the construction which the court had put upon the former constitution. that the legislature could not vest the power to levy taxes for corporate purposes in other than the corporate authorities, and that it could not compel a municipal corporation to incur a debt against its will.

We are of opinion that the decision in the case of *Dunnovan* v. *Green* still applies under the present constitution, and must govern, and that the Auditor retains the power he was there held to possess, to levy taxes of this description.

It is objected that the certificate of compliance with the preliminary conditions was not sufficient to entitle the bonds to be registered, in this, that it was not positive, but to the best of the officer's knowledge and belief. The requirement of the act in this respect is, that the officer named shall certify under oath that all the preliminary conditions, etc., have been complied with. One of such conditions is, that a majority of the legal voters living in the county, township, city or town, as it may be, should have voted in favor of the subscription. It would be hardly possible for the officer to have actual knowledge of such a fact. It could not be expected of him that he could honestly do more than swear to it according to the best of his knowledge and belief. The Auditor accepted and acted upon the certificate as sufficient. We are not disposed to hold it to be otherwise.

There is no force in the objection that the interest which the taxes were levied to meet was not yet due. It would become due November 1, 1871, and the tax to meet it was properly levied for the year 1870. Payment of the taxes levied for the year 1871, could not have been enforced under the law in time to meet the interest when it would fall due.

We are of opinion the bill discloses no sufficient ground for the interference of the court to stay the collection of these taxes.

The decree is affirmed.                    *Decree affirmed.*