THE MERCHANTS LOAN AND TRUST COMPANY, Defendant in Error, *vs.* THE CITY OF CHICAGO, Plaintiff in Error.

*Opinion filed June 16, 1914.*

1. MUNICIPAL CORPORATIONS—*an ordinance construed as to the provision for interest on water extension certificates.* Where an ordinance provides that money advanced by property owners for laying water mains shall be refunded to them whenever, upon a proper survey, it is shown that a revenue of ten cents per lineal foot is being derived therefrom, "provided that if the moneys so advanced are not paid back within two years, that interest at the rate of five per cent per annum shall be allowed after the expiration of two years until paid," interest begins to run two years after the money is advanced, as shown by the water extension certificates, without regard to the amount of revenue being derived.

2. SAME—*the city of Chicago had power to provide for water extension certificates and for interest thereon.* It was within the power of the city of Chicago to provide by ordinance that property owners should advance the cost of water mains, and that the money so advanced should be refunded from the water tax fund when the revenue from the frontage water rates reached ten cents per lineal foot, and that if the money was not refunded within two years it should bear interest from the expiration of such two years until paid.

3. SAME—*the power to make local improvements is not limited to special assessments.* It is within the power of a city, under the Local Improvement act, to make local improvements either by special assessment, special taxation or general taxation, and section 9 of article 9 of the constitution also gives that right.

4. SAME—*a city may provide for interest by contract lawfully made.* While there is no implied liability upon the part of a city to pay interest except where money is wrongfully obtained and illegally withheld, yet the city may incur liability for interest by contracts which it may lawfully make.

5. SAME—*the act of 1873 contemplates that a city may borrow money to construct water-works.* The act of 1873, for the construction and maintaining of water-works, contemplates that a city may borrow money for the purpose of constructing water-works and provide for re-paying the same by general taxation or from the funds collected from water-taxes, rents or rates.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. DEAN FRANKLIN, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, and NICHOLAS MICHELS, (A. L. GETTYS, of counsel,) for plaintiff in error.

MUSGRAVE, OPPENHEIM & LEE, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a suit brought by the Merchants Loan and Trust Company, as executor of the estate of Lambert Tree, deceased, in the circuit court of Cook county, against the city of Chicago, to recover $2761.73, and interest thereon at five per cent from July 25, 1897. On the trial, jury being waived, judgment was entered against the city for $4908.96. The case was taken to the Appellate Court by writ of error, where the judgment was affirmed, and has been brought here by petition for *certiorari.*

The judgment was based on the following instrument, in writing:

"CITY OF CHICAGO,
*Department of Public Works,*
   *Bureau of Engineering.*                                    *July 25, 1895.*

"It is hereby certified that Lambert Tree has advanced the sum of twenty-seven hundred and sixty-one and 73/100 dollars for the purpose of laying [certain described water pipe,] which amount will be refunded to him (without interest if so refunded within two years from the date hereof, but with interest, at the rate of five per cent per annum from and after the expiration of said two years, if not so refunded within said two years,) from any money belonging to the water tax fund in the city treasury not otherwise appropriated, whenever, upon a proper survey, it is shown that a revenue from frontage water rates of ten (10) cents per lineal front foot per annum is being derived from said pipe.

"By order of the commissioner.
                              JAMES J. GRAHAM, *Ass't Sec.*
$2761.73                      L. B. JACKSON, *City Engineer.*"

In 1891 the city of Chicago passed an ordinance authorizing the commissioner of public works to extend water mains when the property owners advanced the cost of the same, and that said money so advanced should be re-paid from the surplus of the net income of the water rate. May 16, 1892, the city council passed the following ordinance:

"Whereas there is an urgent demand from every section of the city for street improvements; and whereas it will be impossible to proceed with any of the streets now under assessment until proper provision is made for the extension of water mains; and whereas this council has recently authorized the issuance of water certificates amounting to $1,000,000, the proceeds of which were to be used in extending and improving the water system; and whereas it is of the utmost importance that no part of the proceeds of said certificates be used except for the extension of water mains in localities where the actual number of residents will warrant the outlay from a business standpoint; and whereas in the past it has been the practice to pass ordinances for street improvements in uninhabited subdivisions, which

said ordinances were promptly repealed when the water pipe was laid; now, therefore,

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. That whenever an ordinance is hereafter passed by this council for the filling, grading, curbing and paving of any street, it shall be the duty of the commissioner of public works to ascertain whether the street or streets on which such improvement is ordered contains a sufficient number of houses to pay a revenue to the city of ten (10) cents per lineal foot for every foot of water pipe laid on said street or streets, when, if such be the case, he shall at once proceed under the ordinance to lay the necessary water mains. If upon such examination it is ascertained that a revenue of ten (10) cents per lineal foot cannot be derived, the owners of property abutting on said street or streets shall be required to advance the money necessary to cover the cost of all pipe laid on every such street or streets. * * *

"Sec. 2. The moneys advanced by owners of property for the laying of water mains, as provided in section 1, shall be returned by the city from moneys not otherwise appropriated, whenever, upon a proper survey, it is shown that a revenue of ten (10) cents per lineal foot is being derived therefrom: *Provided,* that if the moneys so advanced are not paid back within two years, that interest at the rate of five per cent per annum shall be allowed after the expiration of two years until paid."

In July, 1892, another ordinance was passed, which provided that if any special assessments for the purpose of laying or extending any water main should be collected by the city of Chicago, the holder of the receipt therefor should be re-paid said sum from the surplus of the net income from the water rates under certain conditions. In the Revised Code of Chicago for 1897 section 1669 on this subject reads: "The commissioner of public works

may extend water mains where the owners of the property or persons desiring such extension shall advance and pay into the city treasury a sum of money equal to the entire cost thereof; and whenever, upon a proper survey, it is shown that a permanent annual revenue of ten cents per lineal foot is being derived from said water mains, then said money so advanced, as aforesaid, shall be re-paid to the person or persons so advancing the same: *Provided, however,* if the money so advanced is not paid back within two years, interest at the rate of five per cent per annum shall be allowed after the expiration of said two years until paid." The code of the city of 1905 is substantially the same on this question as section 1669 above quoted, except that the rate of interest is three and a half instead of five per cent. There has been no change in the ordinance applying to this question since that date.

The evidence introduced at the trial showed that Lambert Tree on July 25, 1895, advanced to the city of Chicago $2761.73 for the purpose of laying water pipes in certain streets in said city; that in consideration of such loan said certificate of July 25, 1895, was given him, and that it has been continuously in his possession from that date until his death and since then in the hands of his executors. Proof was offered showing that it was the custom of the city of Chicago to pay water extension certificates like the one sued on, with five per cent interest from two years after the date on those issued before 1905 and three and a half per cent on those issued since 1905.

Counsel for the plaintiff in error concede that the city should pay the principal of such certificate but deny that it is liable for the amount of interest found by the trial court. They first contend that the ordinance means that the interest shall only begin to run from the date when it is shown by a proper certificate "that a revenue from frontage water rates of ten cents per lineal foot per annum is being derived from said pipe." No such construction can

be put on the certificate given by the city to Lambert Tree, read by itself, for that says, "two years from the date hereof," which obviously means from the date of the certificate. The ordinance provides that "if the moneys so advanced are not paid back within two years, that interest * * * shall be allowed after the expiration of two years until paid." The fundamental object in construing an ordinance or statute is to find the intention which the legislative body that passed it had as to its meaning. The plain and unambiguous meaning of this provision of the ordinance is that the interest begins to run two years after the money is advanced. Any other construction would put a strained and unnatural meaning upon the language used in the proviso. The city officials have heretofore placed this construction upon this portion of these various ordinances.

Counsel for the city further contend that it had no power, either expressly or impliedly, to enter into this contract for interest; that the improvement in question is a local improvement, as that term is understood in our law, and can only be made by special assessment, special taxation or general taxation; that the city has no authority to borrow money for the purpose of making such improvements even if such loans are paid out of the general or special taxes. They also argue, as we understand them, that this sort of an improvement can only be constructed under the Local Improvement act of 1897 or some other act authorizing the construction of local improvements. The first section of the Local Improvement act of 1897 provides that municipalities are vested with the power to make local improvements "by special assessment, or by special taxation, of contiguous property, or by general taxation, or otherwise, as they shall by ordinance prescribe." Section 4 of the act relied on by counsel for the city must be read in connection with said section 1. It was the manifest intent of the legislature to grant by this act the power to make local improvements by special assessment, special

264 — 6

taxation or general taxation. In a certain sense all improvements within a municipality are local. A local improvement is a public improvement which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, conferring a special benefit upon real property contiguous to the locality of the improvement. (*City of Waukegan* v. *DeWolf,* 258 Ill. 374.) Under section 9 of article 9 of the constitution of 1870, cities, villages and towns have the right to make local improvements by special assessment, special taxation or general taxation. (*Wilson* v. *Board of Trustees,* 133 Ill. 443; *City of Chicago* v. *Brede,* 218 id. 528.) While the question of implied power of municipal corporations in this State to borrow money for corporate purposes does not appear to have directly arisen, it has been incidentally discussed in decisions involving cognate questions. The law is, that municipal bodies can only exercise such powers as are conferred upon them by their charters, and all persons dealing with them must see that they have the power to perform the proposed act. The power to borrow money and create indebtedness is not an incident of such local government. Such power cannot be exercised unless it is conferred by charter. (*Law* v. *People,* 87 Ill. 385; *Coquard* v. *Village of Oquawka,* 192 id. 355; 1 Dillon on Mun. Corp.—5th ed.—sec. 287, and cases cited.) Municipal organizations are not liable for interest on debts in this State in the absence of an express agreement therefor, the only exception being where money is wrongfully obtained and illegally withheld. (*City of Danville* v. *Danville Water Co.* 180 Ill. 235.) But where the implied liability for interest is denied, the liability therefor may be incurred by contracts lawfully made. (*County of Jackson* v. *Rendleman,* 100 Ill. 379; 2 Dillon on Mun. Corp. sec. 867.) The allowance of interest on deferred installments in special assessment proceedings, under local improvement and other special assessment acts, has always

been provided for by legislation in this State, and this
court has repeatedly assumed that such interest was lawful.
*Hulbert* v. *City of Chicago,* 213 Ill. 452; *Gage* v. *City of
Chicago,* 216 id. 107; *McChesney* v. *City of Chicago,* 226
id. 238.

The city contends that there is no statute authorizing
the borrowing of money on a certificate as it was borrowed
here. Counsel on both sides concede that water mains of
the character here in question may be constructed under
the provisions of the act of 1873 for the construction and
maintaining of water-works, (Hurd's Stat. 1913, p. 337,)
but counsel for the city argue that as this is a local im-
provement the money must be raised, under section 5 of
that act, by special assessment. That section does not pro-
vide that such improvements as this *must* be paid for by
special assessments but that they *may* be paid for in that
way. It is clear from the other provisions of the act that
the entire system of water-works, including reservoirs, hy-
drants and water mains, may be paid for by general taxa-
tion. Such is the effect of the decisions of this court in
*Village of Morgan Park* v. *Wiswall,* 155 Ill. 262, *Hewes* v.
*Glos,* 170 id. 436, and *Ewart* v. *Village of Western Springs,*
180 id. 318, and cases therein cited. Under those decisions
that part of the water-works which is not a local improve-
ment may be put in by general taxation and that part
which is really a local improvement may be put in by spe-
cial assessment on the property benefited, or all of the water-
works, including the water mains, may be put in by general
taxation. It is clear, also, from the reading of the various
sections of this statute, especially sections 2 and 6, that
the legislature intended that a municipality could borrow
money for the purpose of constructing the water-works and
pay for the same by general taxation or from the funds
collected from water taxes, rents or rates. Furthermore,
there can be no question that if the city is liable for the
principal of this certificate it must also be held liable for

any interest due under the terms of the ordinance and the express agreement given to Lambert Tree, upon which this suit is based.

The argument of counsel for the city is without merit that it is unjust and against public policy to require the city to pay interest, under the provisions of this ordinance, from two years after the advancing of the money, as it might be years before there would be enough revenue from the water mains so that the money could be paid back. We do not think the agreement, under that ordinance, is unjust to the interests of the city. The public policy of the State is found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of government officials. (*Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180, and cases cited.) Under the statutes and the constant practice of government officials it is manifest that to require the city to pay the interest in accordance with the terms of its express agreement is not contrary to public policy.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*