(No. 27139.—

DEAN MILK COMPANY *et al.*, Appellees, *vs.* THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed January 20, 1944—Rehearing denied March 22, 1944.*

c

566

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, L. LOUIS KARTON, LOUIS H. GEIMAN, and HARRY MARKIN, of counsel,) all of Chicago, for appellants.

FRED A. GARIEPY, CHARLES O. RUNDALL, and HORACE A. YOUNG, (OWEN RALL, and JOHN L. SPALDING, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county entered in an action where injunctional relief and a writ of *mandamus* were both prayed. A permanent writ of injunction was issued restraining the city of Chicago and its officers from interfering with plaintiffs in the sale of milk or milk products in quantities less than one gallon in single service containers. Such containers are known as "Pure-Pak" containers. The judgment also directed a writ of *mandamus* to issue commanding the city officials of the city of Chicago to issue plaintiffs, upon payment of fees as fixed by the ordinance, a permit to sell milk in Chicago in such single service containers. The issue involves the construction and validity of a provision in the milk ordinance of the city of Chicago. The trial judge certified the validity of a municipal ordinance was involved, and, therefore, the case has been brought to this court by direct appeal.

Section 154-15 of the Municipal Code provides that: "Any milk or milk products sold in quantities of less than one gallon shall be delivered in standard milk bottles;

* * *." Defendants construe the ordinance to mean glass bottles. Plaintiffs contend that: (1) The single service paper container in which they sell milk is a "standard milk bottle" within the meaning of the ordinance; (2) that any power which the city had to prohibit the sale of milk in paper containers was taken away, by the Illinois Milk Pasteurization Plant Act of 1939, (Ill. Rev. Stat. 1939, chap. 56½, par. 115-134,) and that the ordinance is in conflict with this statute and therefore void; and (3) that the ordinance, if construed to prohibit the use of single service paper containers, would be unreasonable and void.

The issues have had an extended history of litigation in both the Federal and State courts. The original suit was filed by plaintiff Fieldcrest Dairies, Inc., in the United States District Court, Northern District of Illinois, on February 2, 1939. It asked for an injunction restraining the city and its officers from interfering with plaintiff's sale of milk in single service containers. It also prayed for a declaratory judgment holding that single service paper milk containers are "standard milk bottles" within the meaning of the ordinance, or, in the alternative, that a declaratory judgment be entered holding the ordinance invalid when applied, as in its case, to prohibit the sale of milk by plaintiff in single service containers. A master in chancery of the Federal District Court heard voluminous evidence and filed a report, on April 27, 1940, finding all the issues in favor of the city. On October 23, 1940, the United States District Court sustained objections to the master's report and entered a decree enjoining the city and its officers from interfering with plaintiff in the sale and delivery of milk in single service containers. A declaratory judgment was also entered finding that plaintiff's single service containers were "standard milk bottles" within the meaning of the ordinance and that such containers were in conformity with the ordinance. (*Fieldcrest Dairies, Inc.* v. *City of Chicago,* 35 Fed. Supp. 451.) An appeal was taken,

and on August 4, 1941, the United States Circuit Court of Appeals held that the district court erred in finding that single service containers were "standard milk bottles" within the meaning of the ordinance, but it held the ordinance void for the reason it was contrary to the public policy of the State as expressed in the Milk Pasteurization Plant Act of 1939. (Ill. Rev. Stat. 1943, chap. 56½, par. 115 *et seq.; Fieldcrest Dairies, Inc.* v. *City of Chicago,* 122 Fed. (2d) 132.) The city prosecuted a further appeal to the United States Supreme Court, and on April 27, 1942, that court vacated the judgment of the Circuit Court of Appeals and remanded the cause to the district court with directions to retain the bill pending a determination of proceedings in the State courts. It held that the questions of State law involved should not be passed upon by the Federal courts in the absence of a determination by the State courts, which it was said, constituted a more appropriate forum for the trial of such issues. (*City of Chicago* v. *Fieldcrest Dairies, Inc.* 316 U. S. 168, 86 L. ed. 1355.) On June 10, 1942, the district court entered an order vacating the injunction decree awarding the injunction but retained the cause pending a determination of the issues in a case then pending in the State court.

While the suit was pending in the Federal courts, and on May 15, 1940, the Dean Milk Company, parent corporation of the Fieldcrest Dairies, Inc., filed this action in the circuit court of Cook county. That court, on December 3, 1940, granted a temporary injunction pending a final disposition of the *Fieldcrest Dairies, Inc. case* in the Federal courts. After the United States Supreme Court opinion in the *Fieldcrest Dairies, Inc. case* was filed, the circuit court vacated the temporary injunction and permitted Fieldcrest Dairies, Inc., to join in this action as a party plaintiff. Amended pleadings were filed and the circuit court reissued a temporary injunction. The case was heard on its merits, on a stipulation of facts. It provided

that the record of the hearings before the master in chancery of the Federal court should be received in evidence and considered as though originally heard in the circuit court. The circuit court held the city had no power to prohibit the use of single service containers which were permitted by the Milk Pasteurization Plant Act of 1939, and that the. ordinance as applied to plaintiff's use of single service containers was void.

Fieldcrest Dairies, Inc., is a wholly owned subsidiary of the Dean Milk Company and is engaged in the distribution of milk and milk products at wholesale and retail in various municipalities in Cook and other counties in Illinois. Their plant is located at Chemung, in McHenry county, and has been inspected and approved by the Department of Public Health of the State. During the years 1936 to 1939 the Dean Milk Company made several applications for a permit or license under the ordinance to sell milk in the paper containers, but each application was denied on the ground that the paper containers proposed to be used were not standard milk bottles as required by section 154-15 of the Municipal Code and the rules and regulations of the Board of Health adopted pursuant to the ordinance.

The single service "Pure-Pak" container in which the plaintiffs seek to deliver milk is described as a prismatic box made of paper and paraffined on the inside and outside. It has a gabled top in the middle of which is a pouring lip. It is made in various sizes to contain a half pint, pint or quart. Plaintiffs claim that this carton is a "standard milk bottle" within the meaning of the ordinance.

The rules for the construction of an ordinance are the same as those applied in the construction of a statute. (*People ex rel. Dwight* v. *Chicago Railways Co.* 270 Ill. 87; *People ex rel. City of Chicago* v. *Hummel,* 215 Ill. 43; *People ex rel. Griffith* v. *Mohr,* 252 Ill. 160; *Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329; *Stanton*

v. *City of Chicago,* 154 Ill. 23.) As is the case with statutes, the primary rule for the interpretation and construction of ordinances is to ascertain and give effect to the intention of the law-making body. (*People* v. *Price,* 257 Ill. 587; *Merchants Loan and Trust Co.* v. *City of Chicago,* 264 Ill. 76.) To determine the intent of the legislative body, ordinances are to be construed as of the time of enactment and as they were intended to be understood when they were passed. Expediency, born of changing circumstances and conditions, will not alter the meaning of plain and ordinary language used in an ordinance. The words of an ordinance must be taken in the sense in which they were understood at the time the ordinance was enacted. (*People ex rel. Fyfe* v. *Barnett,* 319 Ill. 403; *United States* v. *Union Pacific Railroad Co.* 91 U. S. 72, 23 L. ed. 224.) It is true that statutes and ordinances framed in general terms apply to new cases that arise and to new subjects that are created, from time to time, and which come within the general scope and policy of the ordinance. The rule is well recognized in statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and businesses within their general purview and scope coming into existence subsequent to their passage. But this rule does not aid plaintiffs.

The question here presented is the meaning of the phrase "in standard milk bottles" and what did the city council intend to include within that term when the ordinance was passed in January, 1935. The definition is to be found not in any conjecture as to what the council would have intended in view of changing circumstances and trade usages, but what the council actually intended it to mean and include when the ordinance was passed. The intent that controls in the construction of an ordinance has reference to the intent of the council which passed it, and the question is what the words used therein meant to the coun-

cil using them. When such matters are brought into court the only function of the court is to interpret the ordinance and declare the intent of the legislative body in enacting it. They have no legislative powers, and in the interpretation and construction of statutes and ordinances their sole function is to determine and, within the constitutional limits of the legislative power, to give effect to the intention of the legislature. (*Sup* v. *Cervenka,* 331 Ill. 459; *United States* v. *Goldenberg,* 168 U. S. 95.) In this case the court is not concerned with the policy of the ordinance or the propriety of an amendment to permit the sale of milk in single service "Pure-Pak" containers. No mere omission or failure of the council to amend the ordinance to meet changing conditions will justify any judicial addition to the language of the ordinance. Changes can be made in the ordinance by the city council when it deems such changes are necessary or proper in view of changed conditions.

The evidence shows that the milk bottle was invented and first placed on the market as a container of milk in 1884. The glass milk bottle used today is similar in general appearance, size and shape to the original. Few changes have been made, and for over sixty years the term "milk bottle" has had a· very definite and well-understood meaning as to what it included. It included in ordinary language a type of glass bottle of characteristic size and shape with which almost everyone is familiar. In 1935, when the ordinance in question was enacted, milk in less than gallon quantities was delivered exclusively in such bottles, and paper cartons were not used in Chicago or its vicinity for the delivery of milk. Single service paper containers came into general use for the delivery of milk about 1938, and they can not be said to have been within the contemplation and intent of the council when the ordinance was enacted in 1935. Nor do such paper containers come within the definition of a milk bottle. While it may be true that bottles are made of other material than glass,

yet the language used in an ordinance must be construed according to its ordinary meaning at the time it was used, and, in 1935, the phrase "milk bottle" meant a glass bottle of the ordinary size and shape. Many witnesses called by plaintiffs admitted that the "standard milk bottle" is the glass milk bottle and that it does not include paper containers or single service cartons. In a letter dated January 13, 1936, written by the Dean Milk Company to the Chicago Board of Health, it is stated that they would like to present facts about "delivering milk to the city of Chicago in paper containers instead of bottles." The difference was also recognized by the United States Public Health Service which construed "standard milk bottles" to exclude paper containers. In June, 1939, the United States Public Health Service amended its so-called model milk ordinance by adding after the words "standard milk bottles" the phrase "or single service containers." The evidence demonstrates that those engaged in the milk industry, or in the adoption of regulatory legislation assuring pure milk, generally regarded "standard milk bottle" to mean a glass milk bottle and not to include paper containers. The difference and distinction between the meaning of the term "standard milk bottle" and plaintiffs' single service paper container runs through all the evidence. It is inescapable that the words "standard milk bottles" as used in this ordinance mean the familiar glass milk bottles in common usage when it was adopted and cannot be construed to include "paper single service containers."

Power and authority for the regulation of the sale of milk was clearly given to the city council by sections 1, 50, 53, 66, and 78 of article 5 of the Cities and Villages Act. (Ill. Rev. Stat. 1939, chap. 24, pars. 65, 65.49, 65.52, 65.65 and 65.77; *Koy* v. *City of Chicago,* 263 Ill. 122; *City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294; *City of Chicago* v. *Union Ice Cream Mfg. Co.* 252 Ill. 311; *Gundling* v. *City of Chicago,* 176 Ill. 340.) These sections were in-

corporated in the Illinois Revised Cities and Villages Act, effective January 1, 1942. (Ill. Rev. Stat. 1941, chap. 24, secs. 23-1, 23-63, 23-64, 23-105 and 23-81.) Plaintiffs do not question but what the city had the power in 1935 to enact the ordinance in question, but argue that the Milk Pasteurization Plant Act of 1939 repealed, by implication, the authority given by the prior acts so that the ordinance, applied as the city has construed it to forbid the delivery of milk in single service paper containers, contravenes the public policy of the State as established by the Milk Pasteurization Plant Act and is in direct conflict with that act. The contention is predicated on the provision of the statute which recognizes the use of paper single service containers. It expressly authorizes the Department of Public Health to regulate and prescribe the minimum requirements for such equipment.

The law is well settled that cities may exercise only such power as is conferred upon them by the State legislature. (*City of Chicago* v. *Murphy,* 313 Ill. 98; *Consumers Co.* v. *City of Chicago,* 313 Ill. 408; *Huesing* v. *City of Rock Island,* 128 Ill. 465; 1 Dillon on Municipal Corporations, 5th ed., sec. 237.) Municipal ordinances must be in harmony with the laws of the State, and in case of a conflict the ordinance must give way. However, the great weight of authority is to the effect that the legislature may confer police power upon a municipality over subjects within the provision of existing State laws. *City of Chicago* v. *Union Ice Cream Mfg. Co.* 252 Ill. 311; Cooley's Constitutional Limitations, 6th ed., 239; 2 Dillon on Municipal Corporations, 5th ed., sec. 633.

The title of the Milk Pasteurization Plant Act of 1939 states that it is: "An Act regulating the handling, processing, labeling, sale and distribution of pasteurized milk and pasteurized milk products." (Ill. Rev. Stat. 1941, chap. 56½, par. 115.) Sections 1 to 18 of the act contain numerous regulatory provisions of which section 15, item 10,

provides that: "All multi-use containers and equipment with which milk or milk products come in contact shall be constructed in such manner as to be easily cleaned and shall be kept in good repair. Single service containers, caps, gaskets and similar articles shall be manufactured and transported in a sanitary manner." The saving clause of the act, section 19, states that: "Nothing in this Act shall impair or abridge the power of any city, village or incorporated town to regulate the handling, processing, labeling, sale or distribution of pasteurized milk and pasteurized milk products, provided that such regulation [does] not permit any person to violate any of the provisions of this Act." Ill. Rev. Stat. 1941, chap. 56½, par. 133.

Plaintiffs contend that this act, by providing that single service containers "shall be manufactured and transported in a sanitary manner," permits the use of single service containers and takes from the city the power to prohibit their use. Plaintiffs' explanation of the effect of the saving clause is that it was intended to reserve to the cities the power to act only in matters not included in the terms of the statute.

The act, construed as a whole, recognizes that single service containers may be used in the State and provides that cartons shall be manufactured and transported in a sanitary manner. The State Department of Public Health is given the power to set standards, and the Department of Public Health has, in accordance with the power granted, established standards and requirements for the manufacture and handling of single service containers. But there is no provision in the statute that either expressly or by implication provides that cities must permit the use of single service containers. The fullest meaning that may be given section 15, items 1 and 10, of the statute is that if single service containers are permitted to be used in a city, they shall be manufactured and transported in a sanitary manner and shall conform to certain minimum requirements

to be prescribed by the Department of Public Health. The provision must be construed in connection with the saving clause, section 19, which specifically reserves to the cities the power to "regulate the handling, processing, labeling, sale or distribution of pasteurized milk." This language is clear and is beyond the necessity of construction. It cannot be disregarded by strained construction or the rejection of any part of it as surplusage. (*Crozer* v. *People ex rel. Hanberg,* 206 Ill. 464; *Decker* v. *Hughes,* 68 Ill. 33; *People ex rel. Pollastrini* v. *Whealan,* 353 Ill. 500.) It reserves to the city the right to regulate, in the interests of providing pure milk, that part of the milk industry which pertains to the handling, processing, labeling, sale and distribution of pasteurized milk. This would include regulation as to the container in which it was delivered. The Milk Pasteurization Plant Act did not abridge or impair the power of the city of Chicago to prohibit the delivery of milk within the city in single service containers.

Plaintiffs further contend that if the ordinance is construed to prohibit the use of single service paper containers, it is unreasonable and must be declared void for that reason. Voluminous evidence appears in the record bearing on that question. More than twenty witnesses testified for plaintiffs and nine for defendants. Approximately 120 exhibits were admitted. Plaintiffs' evidence tends to establish that single service containers as used by them were just as sanitary as the "standard milk bottles," and as a matter of fact were better adapted to protect the public against impure milk. Their proof shows that single service containers have, in recent years, been widely used in various cities; that no illness or disease has been traced to them, and that their use has been approved by the United States Public Health Service, the Chicago Board of Health, and the Illinois Department of Health. On the other hand, defendant's evidence tends to prove that the single service containers used by plaintiffs are not as sanitary as the glass

milk bottle made of sterile glass, and are not constructed so as to be as easily cleaned and sterilized as the glass bottles. Evidence was introduced to show that paper containers are not sterile; that in the manufacture, conversion and filling of them, bacteria may be found in the walls of the containers; that sometimes they do not receive effective bactericidal treatment and that in some instances such containers have been shown to contain high bacterial counts. It is further shown that sanitary conditions differ in paper mills where containers are made and that effective sanitary control of such containers would require supervision and control of all the processes followed in the manufacture and conversion of them into cartons; that such containers, even when paraffined, are to some extent absorbent and being such the milk may absorb such bacteria; that particles of paraffin break loose from the containers and get into the milk.

The evidence shows that cream in the milk does not separate from the milk and rise to the top as it does in a glass bottle. Defendants urge that since the single service containers are not transparent, it is more difficult to ascertain whether milk in such containers is free from foreign particles than it is in the glass bottle. It is also argued that the city control over the sterilization of milk containers is more effective and less difficult with the glass bottle than with the paper containers.

It will be observed that some of the evidence introduced in support of the reasonableness of the ordinance bears no reasonable connection between the distribution of milk in quantities less than a gallon and danger to the public health but there is other evidence which shows such connection. In *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597, in discussing the relation of the public health to the ordinance regulating the distribution of food in the city it was said: "However remote the question may be, whether it exists and the degree of its importance are for

the determination of the city council, and while its determination is not final, it will not be set aside if there is any reasonable relation between the action of the council and the public health."

The law is well settled that when the legislature has authorized a city to pass ordinances upon any subject, the provisions of the ordinance being left to the discretion of the law-making body, the discretion with which it is vested is not absolute, but is subject to the limitation that the ordinance must be reasonable. (*City of Lake View* v. *Tate,* 130 Ill. 247.) Whether the ordinance in a particular case is reasonable is a judicial question, and an unreasonable ordinance will be held void by the courts. (*Koy* v. *City of Chicago,* 263 Ill. 122; *City of Chicago* v. *Chicago and Northwestern Railway Co.* 275 Ill. 30; *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422; *City of Mt. Vernon* v. *Julian,* 369 Ill. 447.) It is well settled that when a city exercises its power of regulation upon a subject, courts will not declare the regulatory provisions void unless they are palpably unreasonable and arbitrary, and that courts are without power to inquire into the wisdom of an ordinance and have nothing to do with the mere policy of legislation. (*City of Chicago* v. *R & X Restaurant,* 369 Ill. 65; *City of Chicago* v. *Waters,* 363 Ill. 125; *Stearns* v. *City of Chicago,* 368 Ill. 112; *Booth* v. *Illinois,* 184 U. S. 425; *Koy* v. *City of Chicago,* 263 Ill. 122.) A court will not hold an ordinance void as being unreasonable where there is room for a fair difference of opinion on the question, even though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose. *Klever Shampay Karpet Kleaners* v. *City of Chicago,* 323 Ill. 368; *Hartman* v. *City of Chicago,* 282 Ill. 511; *City of Chicago* v. *Washingtonian Home,* 289 Ill. 206; *City of Chicago* v. *Mandel Bros.* 264 Ill. 206.

The maintenance of a pure and wholesome milk supply is one of the principal concerns of municipal government. The regulation of the sale and distribution of milk is vital to the preservation of public health. The city of Chicago had the power and authority to enact an ordinance regulating and prescribing the containers in which milk in quantities of less than one gallon should be delivered within the city. We express no opinion as to the health merits of the controversy as between the single service Pure-Pak containers and the standard milk bottles. The evidence shows some valid reasons which the city council might well consider in requiring the use of the standard milk bottle. It is at least debatable and in such a case the city council is entitled to exercise its own legislative discretion and the courts will not disturb its action. The council is the sole judge of the necessity and wisdom of the ordinance enacted, and we are concerned only with its reasonableness. The ordinance, insofar as it prohibits the use of the single service containers as urged by plaintiffs, is not unreasonable and void and is sustained.

The court erred in ordering the injunction to issue restraining defendants from enforcing the ordinance and committed error in directing the writ of *mandamus* to issue commanding defendants to issue a permit to plaintiffs allowing them to use the single service containers.

The judgment is reversed as to both matters.

*Judgment reversed.*

Mr. JUSTICE STONE, dissenting:

I cannot concur in the conclusions of the majority opinion. The term to be construed is "standard milk bottles." Standard lexicographers define a bottle as a "hollow mouthed vessel of glass, wood, leather or other material for carrying liquids." (Standard Dictionary and Cyclopedia.) "A vessel for holding, carrying or pouring liquids, having a neck and narrow mouth that can be stopped

\* \* \* any of the various receptacles serving as a bottle." (Funk & Wagnall's New Standard Dictionary.) Webster's New International Dictionary points out that the term "bottle" is so loosely used that the limit of its application is not well defined.

The term "standard" is a term applied to articles legally required to conform to specified conditions as to portions of material, as gold or silver of certain defined fineness; that which is established by authority as a rule for measurement of quantity, quality, weight, extent, and the like, as the standard pound, standard gallon, etc. (Webster's New International Dictionary.) Thus when the standard of an article is referred to, the invariable method of so doing is to define the term as to quantity, quality, weight, composition or extent thereof; as for example, the Illinois Pure Foods Act (Ill. Rev. Stat. 1943, chap. 56½, par. 40, sec. 39,) demands standard purity in foods. The term "standard" is defined by specifying ingredients, percentages and the like. So the statute (Ill. Rev. Stat. 1943, chap. 147, par. 43,) providing a standard for the analysis of milk specifies what ingredients shall meet that standard of analysis.

Here no definition of "standard milk bottle" appears in the ordinance. It cannot be assumed this was an accident, nor can it be assumed that the city council considered there would be no improvements in milk bottles, and the fact that it did not define the term is proof that it considered that such bottles as were recognized as "standard" when the ordinance should be applied would meet the requirement. If it had intended such bottle should be made only of glass it could and doubtless would have so declared. The fact, if it is a fact, that glass milk bottles were the only milk bottles known in that city when the ordinance was passed, does not render it necessary to say that such is the only kind of milk bottle intended, but on the other hand the fact that glass milk bottles were not specified renders

it more reasonable to conclude that the city council did not intend to so limit the term used. It cannot be taken for granted that, in 1935, when, as is a matter of common knowledge, changes and improvements in methods of merchandising commodities were frequently appearing, the city council intended that the method of sale and delivery of milk should remain static. The evidence that it did not so intend is the fact that it did not attempt to define a standard milk bottle. It seems to me therefore without support to say that the words used were intended to be limited to a milk bottle of glass. It seems more reasonable to say that the term was used in the broader sense.

The argument is made that to so construe the intent of the city council is judicial legislation. This could be so only if this court ascribed a different intent from that shown by the city council, so the question remains as to what that intent was. Did it intend to limit bottles to glass milk bottles? It did not say so, and it seems more reasonable to say that it did not so intend.

As was said in *People ex rel. Fyfe* v. *Barnett,* 319 Ill. 403, "The true rule is that statutes are to be construed as they were intended to be understood when they were passed." Applying that rule to the construction of the term "standard milk bottle," it seems clear that since the ordinance does not define the term, it was the intention of the city council that so long as the receptacle used is a standard milk bottle when the ordinance is applied the intent of the legislative body is met. To hold otherwise would be to imply that the city council intended to require that article in the milk industry to remain static, no matter what improved article for that purpose might be discovered. It seems untenable to say that a law-making body, aware of commercial development, would intend to prevent or discourage development in that instrument of commerce.

Appellants point to *People* v. *Barnett,* 319 Ill. 403, as supporting their position. In that case it was held that

because the term "electors" as used in the constitution contemplated male voters, the Jury Commissioners Act of 1887 which provided for the selection of jurors from among "electors" did not include women as jurors. There, while the act itself did not define "electors," its construction was governed by the constitution, which did define the term. Thus the definition was provided by the controlling law of the State. In my judgment the case here is not analogous to the *Barnett case*. Here there is not only nothing in the ordinance defining standard milk bottle, but there is no statute or other controlling law containing such a definition as appellees contend for. On the contrary the Pasturization Plant Act tends to indicate a contrary definition.

A similar question was presented in *Uservo, Inc.* v. *Selking*, 217 Ind. 567, 28 N. E. (2d) 61, decided in 1940. A proceeding in contempt was instituted against the defendant for disobedience to a decree requiring the delivery of standard milk bottles. In refusing to find the defendant guilty of contempt for such disobedience the court observed: "It will be noted in this case that the phrase 'standard bottles' is not defined in the order. There seems to be no universal or well-defined meaning of what does or does not constitute a standard milk bottle."

In *City of Chicago* v. *Ben Alpert, Inc.*, 368 Ill. 282, defendant was fined for operating a garage without a license. He was operating a so-called parking lot. The ordinance was by its terms applicable to him. He attacked its validity on the ground that it was unauthorized by the Cities and Villages Act. This act authorized the city to "direct the location and regulate the use and construction of * * * garages." It was argued that a vacant lot is not a garage and that no such thing was contemplated by the General Assembly when the act was passed. This court there observed that the General Assembly did not define the term "garages." It was also there said: "In short, cities and villages are not restricted, in directing the location and reg-

ulating the use and construction of garages, to such premises as may have conformed to the accepted popular definition of the word 'garage' in 1911, when it was incorporated in the statute. Conditions attending the storage and parking of automobiles in metropolitan areas today are vastly different from those prevailing a quarter of a century ago when the State empowered cities to regulate and license garages. It is common knowledge that in cities considerable areas are devoted to parking and storing motor vehicles. Casual observation will disclose that in some instances the premises are denominated parking lots and, in others, outdoor or open-air garages. We are not required to be insensible to this mode of transacting an important part of the automobile business. The express power to regulate the use and construction of garages is sufficiently comprehensive to authorize cities and villages to license open-air as well as closed public garages. A legitimate exercise of this power is immune from constitutional assault."

The supposed distinction between the act there involved, and the ordinance here does not seem apparent. True that act authorized the regulation of the garage business, and the ordinance here relates to milk bottles, but it is also true that the act also authorized the location and construction of garages, and it was there held that a garage, within the intent of the statute, included a so-called parking lot. In neither that case nor this was there a definition of the term used. It seems to me that the intent of the city council in using the term "standard milk bottles" as construed herein, is not only more in accord with the intent of that body, and so more nearly meets the purpose of such regulation, but also affords more protection to the ordinance against the charge of unreasonableness.

WILSON and GUNN, JJ., concur in the foregoing dissenting opinion.