## MATHIAS RICKART

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INTOXICATING LIQUORS—*jurisdiction of justices of the peace in cases for selling without license.* Justices of the peace have jurisdiction in cases to recover the fine imposed for a violation of the second section of the act entitled "Dram Shops," to provide for licensing of and against the evils arising from the sale of intoxicating liquors.

2. SAME—*unlawful selling—shift or device—giving away.* Any person, who has no license to sell intoxicating liquor, who gives it away in any quantity less than one gallon, or in any quantity to be drank on the premises, or in any adjacent room or place, or who resorts to any other shift or device to evade the provisions of the statute, is guilty of unlawfully selling.

3. An association was formed for the avowed purpose of promoting temperance, friendship, etc. They claimed to have bought the dram shop of one of their members, who was elected their treasurer, and who continued in the possession of the dram shop, having no license. to sell intoxicating liquors. Each member was required to pay $1, for which he received a ticket, with the numbers from 1 to 20 inclusive upon it, and, upon presenting this ticket at the bar, the member received liquors or cigars, as he wished, and paid for the same by having numbers punched out of his ticket, each number representing five cents. Any person could become a member by paying $1. The treasurer received all the money, and rendered no account to the other members. He also bought all liquors and cigars: *Held*, that the jury were warranted in finding that this was but a device to evade the law, and that the treasurer was guilty of unlawfully selling intoxicating liquors.

4. In such case, if the liquors really belonged to the association, and the treasurer acted for them, then all the members would be guilty of unlawfully selling, as the liquor would be partnership stock, and the company would have no more right to sell to the individual members, or partner, than a stranger would.

Writ of Error to the Circuit Court of Du Page county; the Hon. H. H. Cody, Judge, presiding.

Mr. J. H. Knowlton, and Mr. E. P. Weber, for the plaintiff in error.

Messrs. E. H. & N. E. Gary, for the People.

Mr. Chief Justice Scott delivered the opinion of the Court:

This action was commenced before a justice of the peace, on complaint under oath, to recover the fine imposed for a violation of the second section of the act entitled "Dram Shops," to provide for licensing of and against the evils arising from the sale of intoxicating liquors. That section makes it unlawful for any person not having a license to keep a dram shop, either by himself or another, to sell intoxicating liquors of any kind in a less quantity that one gallon, or in any quantity to be drank on the premises, or in any adjacent room or place, and subjects the offender to fine and imprisonment. R. S. 1874, chap. 43, sec. 2.

The 12th section provides that any fine or imprisonment mentioned in the act may be enforced by indictment in any court of record having criminal jurisdiction, or the fine may be sued for and recovered before any justice of the peace of the proper county, in the name of the People of the State of Illinois. Under this clause of the statute, the justice of the peace had jurisdiction to try the cause, and we are not aware of any provision of the constitution it contravenes. *McCutcheon* v. *The People*, 69 Ill. 601.

Of the questions raised, only one need be considered, and that has relation to the guilt of defendant. The statute makes the giving away of intoxicating liquors, or other shift or device to evade its provisions, unlawful selling. That defendant resorted to a shift or device to evade the provisions of the law against selling intoxicating liquors, we entertain not the slightest doubt. There is no pretense defendant had a license to sell intoxicating liquors, and hence it follows, if he made any sales in a less quantity than one gallon, or in any quantity to be drank on the premises, or in any adjacent room or place, such sales must have been unlawful.

Prior to the 1st day of July, 1874, defendant had a bar in a room in the "Platt House," where he kept for sale the usual stock of liquors, having a license to keep a dram shop. About that date, there was organized what is called the "Wheaton Co-Partnership Company No. One." The object of the company, as set forth in the articles of association, was, "to promote temperance, friendship and good feeling in the community at large." "Any white male citizen, above the age of 21 years, of steady, industrious habits, sound mind and memory, and good moral character," could become a member of the association on complying with certain conditions. The association, or company, had as officers a president, vice president, secretary and treasurer, whose duties were all defined. The capital stock of the company was to be $300, and was to be invested in business, but what that business was, or its character, is not declared, either in the

articles of association or in the by-laws. One of the by-laws provides, "no partner shall give any goods of the company to a minor, unless such minor is a member of his family;" and another, that "no partner shall sell any of the firm goods to any person or persons whatever, either directly or indirectly." At the time this prosecution was commenced, the proof shows the association consisted of about 150 members.

Notwithstanding it is declared the object of the association is the promotion of "temperance, friendship and good feeling in the community at large," among its first acts, the company rented the room defendant had formerly occupied, purchased of him the remaining stock of liquors he had on hand, and set up and opened a saloon, without having first obtained a license to keep a dram shop, and all under the management of defendant, with the specious title of "treasurer."

Bender, the secretary of the alleged company, was examined as a witness on the part of the prosecution, and gave a description of the place and manner of doing business, as follows: "There were two front rooms in the Platt House, and that the west one was used for an office, store-room and one thing and another; that there was a door between the two rooms, and a front door opening south from the west room, and that from the east room there was also a door opening to the south on the street, which was closed the latter part of June last, and had since that time remained closed; that a club, or association, known as 'The Wheaton Co-Partnership Company No. One,' had had control of the east room from the 1st day of July, 1874; that this club had possession of this east room, and that the defendant stayed there most of the time, and took charge of it and kept it in order for the club; that in this room there was a bar, the same which was there and kept by the defendant before that time; that there was kept there lager beer, two kinds of whisky, bitters, wine, a beer-cooler and glasses, with a lunch, but no

brandy; that the defendant had absolute control of the east room during the night time, and that, from the 1st day of July, 1874, to the 4th day of October, 1874, this beer and other liquors were, from time to time, delivered in glasses to different persons in this room; that the liquors were often replenished by defendant; that moneys received by defendant were by him put in his pocket; that the cost, or price, of one glass of beer was five cents, and five cents for the poorer quality of whisky and ten cents for the better quality, ten cents a glass for wine; one kind of cigars for five cents, another kind ten cents each; that the defendant had nailed up on the bar a United States government license before the 1st day of July, 1874, and that it had remained there ever since; that the defendant, and also his father, drank liquor there without paying for it; that liquor was delivered to boys under the age of 21 years, but persons living outside the county did not get liquors there."

Tickets were issued to persons, on becoming members of the association, entitled "Certificates of Co-Partnership Investment in the Wheaton Co-Partnership Company No. One," signed by the president and secretary, with figures printed thereon from 1 to 20, both numbers inclusive. Such tickets cost $1. Whenever a member wanted anything at the bar, he presented his ticket, and it was punched, by cutting one number for a glass of beer, one for a poor grade of whisky, two for a better grade, and two for a glass of wine, and if he took a cigar, the ticket was punched in the same manner, according to the price of the cigar selected, each number representing five cents.

Although the business had been carried on in this way from the 1st of July to October, no distribution of profits had been made among the alleged members, nor had the treasurer been called upon to render any account. The whole business was transacted by defendant. All purchases were made by him, he received all moneys for tickets, paid all bills, and if he kept any account with the association, the

proof fails to show it. The proof is, "that moneys received by defendant were by him put in his pocket," and no other account is given of the receipts.

Any person, it appears, could become a member of the association simply by buying a ticket. The witness whose testimony we have before cited, says, "that he supposed a person might join the club, call for a glass of beer, get it, have his ticket punched, and then offer back his ticket and demand the balance of the money paid in by him, get it, and cease to be a member of the club." It is added, however, nothing of the kind had ever occurred, but the witness states he had known an instance of a person, who was not a member, drinking beer that belonged to the club, in the club-room.

All this is plainly a device, on the part of defendant and those who desire to patronize his bar, to avoid the provisions of the law, and to enable him to sell intoxicating liquors at retail, as he had formerly done, without first obtaining a license to keep a dram shop. The purpose and object is so transparent, that the subject need not be seriously discussed. The whole thing is a subtle artifice, planned with a view to avoid the penalties denounced against persons violating the law. The ticket arrangement was simply paying in advance and getting the liquors at convenient seasons, when desired. The proposition is absurd, that the ticket-holders really owned the liquors with which the bar was stocked. Each party bought tickets, to be used at the bar when he wanted anything, and for no other purpose.

Should we adopt the theory of the defense, that the several ticket-holders, or parties constituting the association, in fact owned the liquors in the saloon, it would make no better case for defendant, and a vastly worse one for the parties associated with him. In that view, the liquors would belong to the company as partnership stock, and the company would have no more rightful authority to sell to the individual members, or partners, at retail, without a license to keep a

dram shop, than a mere stranger would have. Buying tickets, as we have seen, was simply buying 20 drinks and paying for them in advance. Each one paid for whatever he got, as he would have done had he bought of a licensed seller. It is preposterous to assume that a number of persons may, with impunity, associate themselves together as a firm, or voluntary company, purchase a quantity of liquors and retail them out to the several members as they would to strangers. Such an enterprize is unlawful, and all concerned would be guilty of violating the statute. If such a device could be tolerated, it would render all legislation on this subject nugatory. But the alleged association is a mere fiction. It is nothing but a device, under the guise of a co-partnership company, adopted to enable defendant to sell intoxicating liquors to whomsoever might desire to buy at his counter, and to enable him to do so without taking out a license for that purpose, as the law requires.

The real object of the parties engaged in the business was purposely concealed in the articles of association. Had it been an honest enterprize, there would have been nothing to conceal. It was adopted under legal advice, and is obviously nothing but a shift, or device, to evade the provisions of the law, and whatever liquors were either given away or sold for tickets under that arrangement, come within the definition of "unlawful selling." It was a question of fact whether the association was a mere shift, or device, to evade the provisions of the law, and the jury having found it was, we see no reason to be dissatisfied with the conclusion reached.

The evidence so fully and so clearly sustains the verdict, that we have not deemed it necessary to remark upon the instructions. Any other verdict than the one rendered would have been against the weight of the evidence.

The judgment must be affirmed.

*Judgment affirmed.*