COMMONWEALTH *vs.* JOHN MACK & others.

Suffolk.   November 30, 1904. — March 2, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Boxing Match or Sparring Exhibition.   Public Shows.*

Under R. L. c. 207, § 12, making it a criminal offence to engage in, give or pro-
mote a public boxing match or sparring exhibition, if it appears that the public
are invited and admitted to such a match or exhibition as to other places of
amusement on tickets entitling them to seats varying in location according to
the price paid, the exhibition may be found to be public, although the building
is leased to a club and each applicant for a ticket is required to sign a request
to become a member of the club, it being a question for the jury whether the
machinery of the club is a mere sham and fraudulent contrivance to evade the
law.

HAMMOND, J.   This was a complaint under R. L. c. 102,
§§ 172, 173, and c. 207, § 12, in which the defendants were
charged in substance with setting up and promoting a public
boxing match and sparring exhibition.   The exhibition was held
on the evening of August 20, 1903, in a large building formerly
a riding academy.   " In the centre a ring was roped off upon a
raised platform ; upon the sides were seats for spectators to the
number of at least fifteen hundred."   On the occasion in ques-
tion there were present about one thousand spectators.   There
were engaged in the match principals, seconds and attendants.
At the trial the defendants did not contend that the match was
not a boxing match and sparring exhibition, but they contended
that the exhibition was not public within the meaning of the
statute.   The evidence bearing upon this question may be
summed up as follows.

The building was leased by a club regularly chartered and
organized under the laws of this Commonwealth, for " the pur-
pose of promoting social intercourse among its members, and the
encouragement of athletic sports and exercises."   By its by-laws
the membership was limited to four thousand.   The exhibition
in question was held under the management of this club.   One
of the by-laws authorized the defendant Sanborn, one of its
board of directors, to receive and act upon all applications for

membership, and to admit any applicant, " reserving the right, however, to the full board to reject any person so admitted if the board . . . considered him an undesirable person to be a member of the club.

" It was Sanborn's custom on admitting an applicant to membership to furnish him a ticket entitling him to a seat on receipt of a sum of money, the amount of which depended upon the location of the seat. A large number of blank forms for application for membership were kept convenient to the ticket office.

" Upon this occasion, as upon others, Sanborn admitted to membership in the club and to the exhibition aforesaid a large number of persons, giving each of them a receipt for one, two, or three dollars, with a ticket entitling him to a seat, the amount paid depending as aforesaid upon the location of the seat. Upon this, as on previous occasions, Sanborn rejected no one who was not drunk or disorderly. Persons were admitted as freely, after conforming to the above requirement, as they would be to a public theatre or other entertainment to which admission is obtained by the payment of money. Persons so admitted to membership afterwards received a card entitling them to the use of the gymnasium apparatus and baths in said building for the term of one · year. The building, it further appeared in evidence, was open from 10 A. M. to 10 P. M. for the members of the club, and the exhibition hall had been used for concerts and wrestling matches for club members without assessment. To witness another boxing exhibition, however, it was necessary for such member to pay another so-called assessment, the amount of which would be determined in the manner aforesaid, and fixed by vote of the board of directors.

" All original applications were kept and were produced in court, and also an alphabetical file showing the names and addresses of all members to whom notices were sent of this and other meetings."

At the close of the evidence the presiding judge stated that he should instruct the jury that " a public boxing match or a sparring exhibition was where the public generally were admitted for the purpose of witnessing the exhibition, and if this was such an exhibition, where all persons were admitted in the same way as to theatres and other public places of amusement,

it would constitute a public exhibition, and it might not be very important or material whether the applicants for tickets were required to sign a request to become a member of the club, or to walk twice around the building, provided it was understood that all such applicants so signing or walking would be allowed to purchase tickets and witness the exhibition."

Whereupon the defendants said that if such were to be the instructions they would consent to a verdict of guilty, which was taken; and the case is reported to this court upon the question "whether such ruling was warranted upon the foregoing evidence. If the ruling was correct, the verdict is to stand."

We understand the report to present the question whether the ruling which the judge stated he should give, and which under the circumstances must be regarded as given, was correct, so far as applicable to the case; and whether upon such a ruling the evidence warranted a conviction that this was a public exhibition within the meaning of the statute upon which the complaint is based.

So far as material to this case it may be said in a general way that an exhibition or amusement is public when the public are invited and admitted to it upon complying with the terms of the admission. The most usual condition is the payment of a small sum of money, but the imposition of other terms not prohibitive but reasonable in themselves and appropriate to the peculiar kind of exhibition, does not necessarily annul the public feature. In many cases one of the conditions may be that the applicant shall have attained a certain age, shall be decently clothed and not under the influence of intoxicating liquor. In the case of a public ball there may be conditions that every man shall be attired in a dress suit and every woman in the colonial costume of the seventeenth century. Nor does the fact that, for the money to be paid something more than the mere right to witness the exhibition is offered as an inducement to procure attendance, as for instance where some souvenir in the shape of a picture of a favorite actor is given to all who purchase tickets, necessarily make the exhibition private.

We are of opinion that the definition of a public exhibition contained in the first part of the ruling was correct and appro-

priate as applied to the case ; and further that " if this was such an exhibition " no valid objection can be made to the last part of the instruction. The general effect of the instruction was to leave to the jury the general question whether this was an exhibition to which the public as such were invited and admitted as to other places of amusement, and that if such was the case they might find that it was public notwithstanding the fact that an applicant was required to sign a request to become a member of the club, provided it was understood that every applicant so signing would be allowed to purchase a ticket and witness the exhibition. The whole question whether this club machinery was a mere sham and a fraudulent contrivance to evade the law was to be left to the jury.

In view of the evidence as to the relative size of the hall and the membership of the club ; of the lack of evidence as to whether any member was ever expected to pay any assessment, or was subjected to any pecuniary obligation whatever, or had any voice in the management of its affairs ; of the facility with which a person could become a member, especially if he wanted to witness one of these exhibitions, blank forms of application for members being kept " convenient to the ticket office " ; of the fact that upon this occasion no one not drunk or disorderly was rejected by Sanborn the ticket seller ; and further of the lack of evidence as to whether the board ever exercised the right to reject a person or ever inquired into the matter, it cannot be said as matter of law that the jury could not have found that so far as respected this exhibition the use of this club machinery was in substance a contrivance for an exhibition to which the public as such were invited and admitted. We see no error in the instructions.

*Verdict to stand.*

*J. H. Vahey, C. H. Innes & P. Mansfield,* for the defendants.

*F. H. Chase,* Second Assistant District Attorney, for the Commonwealth.