(No. 13596.—Judgment affirmed.)

THE VILLAGE OF ATWOOD, Appellee, *vs.* THOMAS OTTER *et al.* Appellants.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

1. MUNICIPAL CORPORATIONS—*affidavit of village clerk is admissible to correct mistake as to giving notice of special meeting.* In an action of debt to recover a penalty for the violation of a village ordinance, if the record kept by the village clerk is not correct in respect to the notice to members of the board of trustees of the special meeting called to consider and pass the ordinance, the affidavit of the village clerk is admissible to amend such record according to the truth.

2. SAME—*record kept by village clerk need not have been prepared by his own hand.* In an action to recover a penalty for the violation of a village ordinance the proof need not show that the record of the special meeting to consider and pass the ordinance was prepared by the village clerk with his own hand but only that the record is the clerk's record and is in accord with the truth.

3. SAME—*what need not appear in certificate of village clerk as to publication and passage of ordinance.* To constitute the certificate of the village clerk to the copy of an ordinance *prima facie* evidence of the publication and passage of the ordinance it is not necessary that the certificate recite that the newspaper in which the proposed ordinance was published had been regularly published for at least six months before the first publication.

4. SAME—*when an ordinance prohibiting billiard tables includes pool tables.* An ordinance prohibiting the keeping, in any place of public resort, of any "billiard, bagatelle, pigeonhole or pin alleys and ball alleys, or any other tables or implements kept or used for a similar purpose," includes pool tables.

5. SAME—*municipal corporation may prohibit billiard tables in all places of public resort.*  Under clause 44 of section 1 of article 5 of the Cities and Villages act, a municipal corporation may, in its discretion, either license or prohibit the keeping and use of billiard tables in all places of public resort.

6. SAME—*when determination that a thing is a nuisance rests with municipal authorities.*  If a thing neither necessary nor useful may or may not be a nuisance in itself, depending upon local conditions and circumstances surrounding its use, the determination whether it is a nuisance or not rests with the legislature or the municipal authorities, and their finding is binding upon the courts.

7. SAME—*when ordinance is not invalid for failure to fix unit of offense.*  An ordinance prohibiting the keeping or using of any billiard table in any place of public resort and subjecting the offender to a fine "for each and every offense" is not invalid for failure to define what shall constitute the unit of the offense, such as an hour or a day.

8. SAME—*ordinance prohibiting use of billiard tables cannot be evaded by organization of pretended· club.*  An ordinance prohibiting the keeping or use of any billiard table in any place of public resort cannot be evaded by the incorporation of a pretended club, which allows anyone to use the tables upon signing the by-laws and paying an initiation fee of twenty-five cents, entitling him to play three games and thereafter play at ten cents a game, as such a club is a place of public resort.

9. SAME—*judgment in debt for violation of ordinance may provide imprisonment until fine is paid.*  Under paragraph 299 of the Cities and Villages act (Hurd's Stat. 1917, p. 408,) a person violating an ordinance of a village may be committed to the calaboose for a term not exceeding six months until the fine is paid, although the action to recover the penalty is an action in debt.

10. PRACTICE—*where the trial court rightly directs a verdict, remarks of the judge will not be prejudicial.*  Where the trial court rightly directs a verdict in an action in debt for the violation of an ordinance, remarks of the judge will not prejudice the rights of the defendant and cannot be taken advantage of on appeal.

11. VERDICT—*verdict will be given favorable construction, if possible.*  All reasonable intendments will be indulged to support a verdict, and even in criminal cases the verdict is not construed with the same strictness as the indictment.

12. APPEALS AND ERRORS—*when a reversal is not justified although there is error in record.*  Where there is no apparent reason why a different result may be expected on a second trial the Supreme Court will not enter a judgment of reversal even if there be error in the record.

. APPEAL from the County Court of Piatt county; the Hon. W. A. Doss, Judge, presiding.

J. L. HICKS, and HERRICK & HERRICK, for appellants.

W. THOMAS COLEMAN, EDWARD C. CRAIG, DONALD B. CRAIG, and FRED H. KELLY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in debt brought by appellee, the village of Atwood, in the county court of Piatt county, in June, 1920, against appellants, to recover a penalty for a violation of an ordinance of the village which provided that no person should within the limits of the village keep, use, permit or allow any billiard or other tables or implements kept for a similar purpose, in any place of public resort. The declaration consisted of ten counts, each of which, as finally amended, charged the appellants, during various days in the year 1919, with keeping, using, permitting and allowing to be kept and used a pool table in a place of public resort. By direction of the court the jury brought in a verdict for plaintiff and assessed appellee's damages at the sum of five dollars, and a judgment was entered by the court on this verdict against the four appellants for five dollars damages with costs and charges, and that each of said defendants be committed to the calaboose in the village until the same should be fully paid or otherwise discharged by due process of law, and further provided that the imprisonment should in no event exceed six months from the date thereof. From this judgment an appeal was prayed and allowed to this court.

On September 23, 1919, the village of Atwood enacted an ordinance which, omitting the title and enacting and repealing clauses, reads:

"Sec. 1. That no person shall within the limits of the village of Atwood, Illinois, keep, use, permit or allow any

billiard, bagatelle, pigeon-hole or pin alleys and ball alleys, or any other tables or implements kept or used for a similar purpose, in any place of public resort.

"Sec. 2. Any violation of this ordinance shall subject the offender to a fine of not less than five dollars nor more than one hundred dollars for each and every offense."

On October 16, 1919, appellants Bart Snyder, Harvey Lewis and Harry Bishop formed an alleged organization called the Atwood Amusement Club, the certificate of incorporation stating that the management of the club should be vested in a board of directors, and that the three last named appellants should be selected as directors for the first year of its existence. The evidence shows that thereafter, on October 31, 1919, the club held its first meeting in the Latch building, in Atwood, being the same building where the pool room was thereafter conducted, and that Lewis was elected president and Bishop secretary; that Otter was appointed manager of the club, and a contract was made with him whereby he rented to the amusement club for the sum of $30 per month, for one year, the first floor of the Latch building for use as a club room; that Otter also leased to the club some pocket-billiard tables and the necessary balls, cues, racks and appurtenances, with chairs and other articles of furniture to be used in and about the tables, reserving to himself sufficient space in the front part of the room for the operation, by himself privately, of a cigar and tobacco stand and for the sale of candies and soft drinks. An agreement was further made between the club and Otter to pay him $30 per month for the tables and other appurtenances, and that if any more tables were installed he should be paid $10 per month for each of them. The agreement further provided that as manager Otter was empowered to make the house rules and to employ an assistant manager, and that the club would pay him $200 a month for his services as manager; that he should keep an account with the secretary-treasurer of all moneys paid in

and paid out, and from the proceeds should retain, monthly, the amount of his salary as manager and rent for the building and tables, etc. Thereafter a constitution and by-laws for the club were adopted, providing, among other things, that "all persons of good moral character eighteen years of age or over may be admitted to active membership," and that "a gentleman shall become a member of the club by virtue of the election or indorsement of a majority of the board of directors or the admission to the club by the manager thereof," and requiring the payment of an initiation fee of twenty-five cents and the signing of the constitution and by-laws. Article 13 of the by-laws provided that "all members shall have access and the right at all reasonable times to the pool and billiard tables and other games of the club, and there shall be the following schedule of charges to members," (naming them.) Article 15 provided: "To each new member shall be issued a ticket, which shall entitle him to a credit of twenty-five cents for payment of any game that may be played at the tables or with the property of the club."

The records of the club introduced in evidence show that it had held, all told, nine meetings; that no one was ever recorded as being present except appellants, and at some meetings only two or three of the four; that at each meeting a check was issued to Otter for the entire amount that had been taken in by the club up to that time, so that Otter received all of the money the club ever took in, except a small license fee paid to the State. The evidence further shows that a pool room was opened in the building, and that anyone who wanted to play pool there could do so by paying an initiation fee of twenty-five cents and signing the by-laws. The evidence tends strongly to show that only Otter ever passed on the qualifications of the applicants as members of the club, and that he allowed anyone to become a member by paying the necessary initiation fee. The evidence also tends to show that on the roster of the

club there were listed as members everyone who entered the pool room and paid the fee, with the age of each person, and while the great majority of them were over eighteen years of age, the average age of the first fifty being about thirty-four years, some are shown under that age, as the roster of the club introduced in evidence gives Elba Quick as seventeen years old, Jack Lewis ten years and Lehman H. Downs five years. As shown by the record, a pool room was operated in the building from the time of the organization of the club until this suit was instituted. When anyone entered who wanted to play pool, all he had to do was to sign this roster and pay twenty-five cents, receiving a card showing payment of that amount, which was good for the first three games. After that, in accordance with the terms of the by-laws, the charge was ten cents per cue per game. The evidence does not show that anyone was ever denied admission to the room who paid the twenty-five cents required by the by-laws and signed the roster.

At the close of all the evidence appellants moved that the jury be instructed to find a verdict in their favor, which motion was denied. Thereafter each appellant entered a separate motion asking the court to withdraw the evidence from the consideration of the jury and instruct the jury to find such appellant not guilty. Each of these motions was denied. Thereafter appellee made its motion to direct the jury to find appellants guilty and assess plaintiff's damages at not less than five dollars nor more than $100 for each and every violation of the ordinance, and that ten violations had been proved by the evidence. The court refused the instruction offered and instructed the jury to find appellants guilty, but that they would only be guilty of one offense under the declaration and that the damages should be not less than five dollars nor more than $100; also instructed the jury that the verdict should be what is known as a joint verdict,—that is, that the amount of damages fixed by the jury should apply to all of appellants jointly, and

that they should not consider the damages against each of the appellants separately.

Counsel for the appellants argue that the ordinance in question was not shown by the record to have been legally enacted. They offered in evidence an ordinance of the village passed and approved August 6, 1906, which provided, among other things, that special meetings of the board of trustees may be called by the president, and that when he calls such special meeting he shall file in the village clerk's office "a statement in writing setting forth the object and purpose of such special meeting and directing the village clerk to give notice of the same. Upon the filing of such statement the village clerk shall cause to be served personally upon each member of the board of trustees, or by leaving at his usual place of residence, a notice of such special meeting, setting forth the object and purpose thereof and the time of holding the meeting." It is argued by counsel that the record does not show that this special meeting was legally called, because it fails to show that one of the six trustees of the village was notified thereof as required by said ordinance. It seems to be conceded that five of the trustees were properly and duly notified by personal service upon them of a written statement, with a copy of the pool room ordinance, as required by the terms of the ordinance of August 6, 1906. When this question was first raised in the trial court there was introduced an affidavit of the village clerk which had been filed with the proceedings of the meeting of the village trustees held September 23, 1919, showing personal service of notice upon all of the six trustees. Evidence was offered to show that one of the trustees, U. S. Garrett, had not been personally served. Thereafter evidence was offered by appellee tending to show that Garrett was out of the city and State at the time of the service of the notice, and that the notice, with a copy of the proposed pool room ordinance, had been left by one of the other trustees with Garrett's wife at his home in the

village. While there is some question as to whether the evidence satisfactorily showed that the paper so left at Garrett's home was a proper notice or contained an accurate copy of the proposed pool room ordinance, we are of the opinion, from an examination of the evidence in the record, that the paper so left was a notice calling the special meeting and had a copy of the ordinance attached.

After this proof was offered and admitted, the trial court, on motion of counsel for appellee, permitted the filing of an amended or substituted affidavit by the village clerk showing that five of the trustees had been personally served, and that Garrett had been served by leaving a copy of the notice at his place of residence. Counsel for appellants most strenuously argue that this amended or substituted affidavit was improperly admitted in evidence as a part of the record of the meeting of September 23, 1919; that the record of the minutes of the village board can only be amended by the action of the board itself, and that the evidence shows that the board did not take any action with reference to amending the record as to the method of service on Garrett and the other trustees, before the admission of this amended or substituted affidavit of the village clerk. This court has held that the proof of service of such a notice as this could be made by oral testimony. (*People* v. *Ryan,* 225 Ill. 359.) It has also held that the proof of the service of such a notice by publication or by personal service is not a part of the record; that it should be based upon other evidence than the record itself, (*Spring Creek Drainage District* v. *Highway Comrs.* 238 Ill. 521,) and that if the clerk, in his attempt to prove the service of the notice, has made a mistake, it is not only within his power, but it is his duty, to correct the mistake so inadvertently made. (*Hepler* v. *People,* 226 Ill. 275.) There can be no question under these authorities that the corrected or substituted affidavit of the clerk as to the actual service of the

notice of the special meeting was properly admitted in evidence and that the clerk had authority to make it.

In this connection it should be noted that the proof tends to show that the copy of the affidavit of such service introduced in evidence had attached to it a copy of the proposed ordinance, wherein the first part of section 2 read, "Any violation of this section," etc., instead of "Any violation of this ordinance." We are of the opinion that the amended or substituted affidavit of the clerk was sufficient to correct this alleged error and show that the copy that was actually attached to the notice of the special meeting read correctly as to section 2,—that is, "Any violation of this ordinance."

It is also urged that the minutes of the special meeting as kept by the clerk were not prepared by him but were given to him (the evidence tends to show by the president of the village board) during the special meeting. This court has held that the clerk of a municipal authority is not required by the statute to prepare by his own hand or write out the findings or orders of the municipal authorities in the record; that the essential thing is that a record be kept by the clerk which shall show accurately the record of the meeting,—that is, it is only necessary to show that the record is his record and that the proof show that it is in accordance with the truth. *Hepler* v. *People, supra; People* v. *Carr,* 231 Ill. 502.

It is further argued by counsel for appellants that the certificate of the clerk to the copy of the ordinance introduced in evidence was insufficient. It is conceded that the ordinance was published in the *Atwood Herald,* as provided by paragraph 64 of the Cities and Villages act, (Hurd's Stat. 1917, p. 326,) but it is insisted that the certificate should also show that the *Atwood Herald* had been regularly published at least six months before the publication of the ordinance in question, in order to comply with "An act concerning the publication of legal notices," in force

July 1, 1909. (Hurd's Stat. 1917, p. 2022.) Paragraph 65 of the Cities and Villages act provides that "all ordinances, and the date of publication thereof, may be proven by the certificate of the clerk, under the seal of the corporation," etc. (Hurd's Stat. 1917, p. 326.) This court has held that this part of said paragraph shows the legislature intended that the production of an ordinance certified by the clerk under the seal of the corporation should be at least *prima facie* evidence of its passage and that it had gone into effect in one of the modes prescribed by the charter of the municipality. (*Schott* v. *People,* 89 Ill. 195; *Lindsay* v. *City of Chicago,* 115 id. 120; *Terre Haute and Indianapolis Railroad Co.* v. *Voelker,* 129 id. 540.) While this identical point does not seem to have been raised or passed upon, this court has held that a certificate of the clerk as to the passage of an ordinance worded identically the same as the certificate in the instant case was sufficient evidence of the due publication of the ordinance. (*Moss* v. *Village of Oakland,* 88 Ill. 109.) Under paragraph 65 as construed by the courts the point raised by appellants is without merit.

The chief argument of counsel for appellants, however, is that the ordinance passed September 23, 1919, by the village council, is unconstitutional and void, being based upon subdivision 44 of section 1 of article 5 of the Cities and Villages act, which reads: "To license, regulate, tax or prohibit and suppress billiard, bagatelle, pigeon-hole or any other tables or implements kept or used for a similar purpose in any place of public resort, pin alleys and ball alleys." (Hurd's Stat. 1917, p. 322.) Counsel's argument as to the unconstitutionality of this provision seems to be that the legislature has thereby delegated to the village authorities, without constitutional right, the power not only to determine the location of public places in which pool and billiard tables may be kept, but to determine whether the use of billiard and pool tables shall be prohibited; that the legislature cannot legally delegate to the village trustees the

authority to either license or prohibit the keeping of all such tables for use in public places within a municipality. This court in *Launder* v. *City of Chicago,* 111 Ill. 291, has passed directly on that question and held (p. 295) : "Under this grant of power it is a matter purely discretionary with the city authorities whether they will license and regulate the business of pawnbrokers or wholly prohibit and suppress business by them within the city. In such case, if the city grants a license it may impose such conditions and burdens as it may see fit. This latitude of power grows out of the fact that it is discretionary to prohibit the business or license it on such terms as the city may choose." (Citing authorities.) After discussing the question at some length the opinion continues (p. 298) : "But it is sufficient to say that we regard the ordinance in question as but a reasonable and proper exercise of the police power of the State and as aimed at the detection and prevention of crime." Substantially the same conclusion was reached by this court in *Nahser* v. *City of Chicago,* 271 Ill. 288.

In this connection it is also urged by counsel for appellants that the ordinance is not in harmony with subdivision 44 of section 1 of article 5 of the Cities and Villages act, in that it prohibits the keeping of such tables in all public resorts. Reasonably construed, we think subdivision 44 in precise language gives this very authority to the village board.

It is also urged by counsel for appellants that the statute and ordinance are invalid because the use of billiard and pool tables under all circumstances is not necessarily a nuisance, and that therefore the legislature was without authority to permit their suppression. The rule, as we understand it, is, that a statute or ordinance which tends in some degree towards the prevention of offenses or the preservation of the public health, morals, safety or welfare is within the police power of the State. There can be no question that pool rooms or the keeping and using of pool and bil�গ

liard tables in places of public resort may tend in some degree towards a disturbance of the public welfare. It is well known that such rooms may become congregating places for idlers and loafers. As was said by the Supreme Court of Nebraska in *Morgan* v. *State,* 64 Neb. 369, a pool hall in a village is apt to degenerate into a trysting place for idlers and a nest for vice. Conceding for the purposes of the argument that a pool room is not necessarily in itself a nuisance, the argument of counsel for appellants practically admits that it might become so because of its surroundings. If a thing neither necessary nor useful may or may not be a nuisance in itself, depending upon local conditions and facts and circumstances surrounding its use, the determination whether it is a nuisance or not rests with the legislature or the municipal authorities and their finding is binding upon the courts. In *North Chicago City Railway Co.* v. *Town of Lake View,* 105 Ill. 207, the court said (p. 212) : "We do not at all question the general proposition, which has been argued with so much elaboration by appellant's counsel, that under a general grant of power over nuisances like the one in question, town authorities have no power to pass an ordinance declaring a thing a nuisance which in fact is clearly not one. The adoption of such an ordinance would not be a legitimate exercise of the power granted, but, on the contrary, would be an abuse of it. But in doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions under a general delegation of power like the one we are considering, their action under such circumstances would be conclusive of the question." To the same effect is *Harmison* v. *City of Lewistown,* 153 Ill. 313. The same conclusion has been reached in other jurisdictions. (See *In re Jones,* 31 L. R. A. (4 Okla.) 548; *City of Burlingame* v. *Thompson,* 74 Kan. 393; *Tanner* v. *Trustees of Albion,* 40 Am. Dec. 337.) It has been held that the ques-

296–6

tion whether or not an ordinance is the proper exercise of police power is a judicial one. "We approach this question under the presumption of law that the ordinance is valid, and the rule of law places upon the party attacking an ordinance as an unreasonable or oppressive exercise of the police power the burden to affirmatively and clearly show where the unreasonableness exists. * * * Where two constructions are possible, one which will sustain the ordinance and the other which will defeat it, the court will adopt the construction sustaining the ordinance,"—citing authorities. *City of Chicago* v. *Washingtonian Home*, 289 Ill. 206.

Counsel for appellants further insist that the ordinance, and apparently the statute on which it is based, are fatally defective in that they do not define what shall constitute the unit of the offense. As we understand the argument, it is that the ordinance should provide that if a table is permitted to be used in a public place for one minute, one hour or one day, as the case may be, it shall constitute the unit of the offense and violation of the ordinance; that this ordinance fixes no unit, and that one court might hold appellants guilty of one offense if the place were held open one day, while another court might hold them guilty of several offenses if it were held open one day. The trial court held that appellants were guilty of only one offense under the ten different counts in the declaration and that only one recovery could be had, and the jury found them liable for the least possible penalty under the ordinance for one offense, hence under the authorities it cannot be said that appellants were injured in any way by the ruling of the court. (*Harmison* v. *City of Lewistown, supra; People* v. *Michael*, 280 Ill. 11.) Moreover, we see no practical difficulty in enforcing the law on the ground suggested by counsel for appellants. Section 259 of the Criminal Code, (Hurd's Stat. 1917, p. 1007,) forbidding the keeping open of a tippling house on the first day of the week, commonly called Sun-

day, and providing a fine, is in the same general terms and does not fix a unit of the offense any more than do the ordinance and statute here in question. · We think the ordinance is not invalid for the reason urged.

Counsel for appellants further argue that neither the State nor a municipality is clothed with the power to deprive a citizen of valuable property rights or personal liberty under the guise of a police regulation; that the law or ordinance in such cases must be directed at the manner of conducting such places but cannot under the guise of police regulation suppress them; that the general welfare of the State is promoted by according to each individual the greatest degree of personal liberty consistent with public right; that a private amusement and social club, such as counsel for appellants argue this one to be as shown by the record, is for the benefit of the community and is in no way contrary to the public health or welfare and can not be suppressed under the authority of the police power. In *Commonwealth* v. *Mack,* 187 Mass. 441, the court had under consideration the question whether a statute was constitutional and within the police power which made a public boxing or sparring match a criminal offense, if it appeared that the public were invited and admitted to such match or exhibition the same as to other places of amusement, on tickets entitling them to seats varying in price paid, according to location, there being a sort of club membership attached. It was held that the statute was valid and that the organizing of the club was a mere sham and fraudulent contrivance to evade the law. In passing on the question of the legality of similar organizations created for the purpose of disposing of intoxicating liquors among their members by means of tickets purchased by each member, this court has held that the whole thing was but an artifice, planned with a view to avoid the penalties against persons violating the law; that the ticket arrangement was simply paying in advance and getting the liquors at convenient sea-

sons, when desired. (*Rickart* v. *People,* 79 Ill. 85; *People* v. *Law and Order Club,* 203 id. 127; *City of Decatur* v. *Schlick,* 269 id. 181; *People* v. *Gilmore,* 273 id. 143.) There can be no question, under these authorities, that the organization of this club was simply a transparent device to evade the provisions of the law and of this ordinance.

Counsel for appellants further argue that the pool room was not a place of public resort as that term should be understood in construing the provisions of the statute or the ordinance here in question. We said in *People* v. *Thompson,* 283 Ill. 87, on page 97: "A place of amusement to which the public are generally invited upon no condition but the payment of a fixed charge is public, in a general sense." Under the reasoning of that case, and of *Lockhart* v. *State,* 10 Texas, 275, *Bandalow* v. *People,* 90 Ill. 218, and *Commonwealth* v. *Mack, supra,* it must be held that this pool room was a place of public resort. See, also, 3 Bouvier's Law Dict. 2765; 4 Words and Phrases, (2d series,) 32; 6 id. 5818.

It is further argued that the ordinance and statute can not fairly be held to cover the regulating or prohibiting of the use of pool tables; that the statute and ordinance simply refer to billiard and other like tables. Webster's New International Dictionary defines "pool" as "a game at billiards, in which each of the players stakes a certain sum, the winner taking the whole; also, in public billiard rooms, a game in which the loser pays the entrance fee for all who engage in the game." Some of the dictionaries call "pool" a branch of billiards, or pocket-billiards. The contract between the amusement club and Otter, in referring to the tables to be used in the room, refers to three pocket-billiard tables, and it appears to have been on these three tables that the pool in question was played. In *City of Clearwater* v. *Bowman,* 72 Kan. 92, the court said: "Even at the present time the word 'billiard table' is employed as a generic term, including the form adapted to the playing of pool." (See to the

same effect, *State* v. *Johnson,* 108 Iowa, 245; 1 Words and Phrases, 802.) This objection of counsel is without merit.

Counsel for appellants further earnestly insist that the trial court assisted appellee's counsel in the trial of the case, and that his statements and conduct in that regard were so improper as to be very prejudicial to the rights of appellants. As the court rightly directed a verdict we cannot see how any remarks of the trial judge could have prejudiced appellants' rights.

Counsel for appellants further argue that the judgment of the trial court is erroneous on the verdict because it not only required payment of the five dollars damages as a debt, but committed appellants to the calaboose in the village until such penalty or damages, with costs, were fully paid or otherwise discharged by due process of law. Counsel in their argument on this point apparently rely on section 5 of chapter 77, (Hurd's Stat. 1917, p. 1802,) which provides that no execution shall issue against the body of defendant except on a judgment based on tort or unless the defendant shall have been held to bail upon a capias. Counsel overlook in this argument paragraph 299 of the Cities and Villages act, (Hurd's Stat. 1917, p. 408,) which provides that for the violation of an ordinance the person may be committed to the calaboose, etc., for a term not exceeding six months for each offense, until the fine, penalty and costs shall be fully paid. The judgment was in full conformity with this last section, and under the reasoning of this court in *City of Chicago* v. *Morell,* 247 Ill. 383, was a proper exercise of the authority given under that section.

Counsel for appellants further argue that the form of the verdict and judgment was wrong because the action was one for debt and the jury simply found in favor of appellee in damages, and that the judgment is for a fine, penalty and costs. The jury found five dollars damages,—the lowest penalty that could be awarded under the ordinance. This court said in *City of Chicago* v. *Morell, supra,* on page 386:

"The law is well settled in this State that an action to recover a penalty for the violation of a municipal ordinance is a civil action, and, although commenced by affidavit and warrant, it is not a criminal proceeding, and the penalty imposed for the violation of such an ordinance is not, within the meaning of the constitution, a debt." Even in criminal cases the verdict is not construed with the same strictness as an indictment. All reasonable intendments will be indulged in its support. (*People* v. *Kargula,* 285 Ill. 478; *People* v. *Tierney,* 250 id. 515.) There can be no doubt as to the meaning of this verdict. The appellants, as the result of it and of the judgment based on it, would only have to pay a fine of five dollars,—the minimum penalty imposed for the offense. The evidence in the record shows a clear violation of the ordinance, and this court has held both in civil and criminal cases, that where there is no reason apparent why a different result might be expected if the judgment were reversed it will not enter a judgment of reversal even if there be error in the record. (*People* v. *Craft,* 282 Ill. 483; *People* v. *Halpin,* 276 id. 363; *Knight* v. *Seney,* 290 id. 11.) Under the reasoning of those cases we are of the opinion that even though the verdict be considered, technically, wrong in form, the judgment should not be reversed for that reason.

Other objections are raised by counsel for appellants which are not necessary to be considered in detail. What has been stated covers substantially all the main points argued in the case, and we do not find any reversible error in the other questions raised.

The judgment of the county court will be affirmed.

*Judgment affirmed.*