ALADDIN'S CASTLE, INC., Plaintiff-Appellee, *v.* THE VILLAGE OF NORTH RIVERSIDE *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 77-1651

Opinion filed November 8, 1978.

Staehlin, Jantorni & Sullivan, of Chicago (John M. Sullivan and Susan L. Jantorni, of counsel), for appellants.

Martin M. Ruken, Stephen L. Berger, and Kenneth C. Shepro, all of Chicago (Friedman & Koven, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants appeal an order of the circuit court of Cook County finding sections 2—11.3, 2—11.9, and 2—11.10 of North Riverside Ordinance No. 75—0—16 void and inapplicable as applied to the plaintiff. Plaintiff, a Delaware corporation licensed to do business in Illinois, operates amusement centers consisting solely of coin-operated amusement devices. The individual defendants are the trustees of the defendant Village of North Riverside (village). The issues on appeal are (1) whether the defendant village had the authority to adopt Ordinance No. 75—0—16, and (2) if so, whether the plaintiff presented sufficient competent and credible evidence to overcome the presumptive validity of the pertinent sections as a reasonable means of attaining an objective within this authority.

On July 2, 1975, plaintiff entered into a lease with Riverside Mall Associates for a 2,068 square foot store within the enclosed North Riverside Park Shopping Center. At the time this lease was entered into, the following relevant sections of the 1967 Municipal Code of North Riverside were in effect:

"2—11—6. No proprietor shall permit or allow any minor to operate or play any multiple play machine or device as defined herein and shall not permit any person under the age of 18 years to play any single play machine or device as defined herein.

2—11—8. No proprietor, operator, or person in charge of a coin operated amusement device shall permit free replays to players on the basis of the player's skill, accumulated score, or any other means, and no machine shall record or indicate free replays.

2—11—9. Any person, firm, partnership, corporation, association or club violating any of the provisions of this Article shall be fined not less than Five Dollars ($5.00) nor more than Two Hundred Dollars ($200.00) for each offense. A separate offense shall be deemed committed on each day during or on which a violation occurs or continues."

On November 3, 1975, the defendants adopted Ordinance No. 75—

0—16. Although this new ordinance repealed the 1967 ordinance, it incorporated sections 2—11—6 (age restriction), 2—11—8 (replay restriction), and 2—11—9 (penalty provision) in sections 2—11.10, 2—11.9, and 2—11.11 respectively. The following section was added:

> "2—11.3 No license shall be issued to any person or for any premises in excess of one (1) license for every 500 square feet or gross floor area for each premise in which said machine or device is located, provided however that no more than ten (10) licenses shall be issued to any applicant or for any premises, regardless of the gross floor area of said premises, provided further that one (1) such license may be issued for any premises with less than 500 square feet of gross floor area."

On October 1, 1976, plaintiff applied to the defendants for coin-operated amusement device licenses as required by the ordinance. Plaintiff's application stated that the gross floor area of its premises was 1,100 feet[1] and listed 40 single play machines as the number of devices sought to be licensed. The defendants denied the plaintiff's application on October 18, 1976, due to the provisions of section 2—11.3 permitting only one license for every 500 square feet of floor space and restricting the total number of licenses per premise to 10.

On November 9, 1976, plaintiff filed in the circuit court of Cook County its petition for the issuance of a writ of mandamus alleging that sections 2—11.3, 2—11.9, 2—11.10, and 2—11.11 of the ordinance were invalid, void, and unconstitutional, and further alleging that it had a clear right to the issuance of the licenses. Defendants answered alleging that the ordinance was not illegal and void, that plaintiff had not established a clear right to the issuance of the licenses, and that the ordinance was a reasonable and proper exercise of its police power. Thereafter, the trial court denied each party's motion for summary judgment.

Following a bench trial, the trial court denied plaintiff's petition for writ of mandamus. However, the trial court found that sections 2—11.3, 2—11.9, and 2—11.10 of Ordinance No. 75—0—16 bore no reasonable relation to the health, safety, or general welfare of the people of the village and were void and inapplicable as applied to the plaintiff. Accordingly, the trial court found plaintiff entitled to declaratory relief and ordered the defendants to issue the licenses to the plaintiff without regard to these restrictive sections of the ordinance. On appeal, the defendants contend that the plaintiff failed to meet its burden of proof to overcome the presumptive validity of these provisions, and that, therefore, the trial court's judgment is against the manifest weight of the evidence.

---

[1] The premises leased were actually 2,068 square feet.

## I.

The village is a non-home-rule municipality. As such, the defendants assert that its authority to regulate coin-operated amusement devices is derived from sections 11—42—2 and 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, pars. 11—42—2 and 11—42—5), which state as follows:

"Sec. 11—42—2. The corporate authorities of each municipality may license, tax, regulate, or prohibit pinball, or bowling alleys, billiard, bagatelle, pigeon-hole, pool, or any other tables or implements kept for a similar purpose in any place of public resort.

Sec. 11—42—5. The corporate authorities of each municipality may license, tax, regulate, or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants, transient vendors of merchandise, theatricals and other exhibitions, shows, and amusements and may license, tax, and regulate all places for eating or amusement."

Although plaintiff's brief asserts only that the defendants exceeded their authority, thus presumably conceding that the authority existed, in its motion for summary judgment plaintiff unsuccessfully argued that the foregoing statutes had been impliedly repealed by section 28—2(a)(1) (Ill. Rev. Stat. 1977, ch. 38, par. 28—2(a)(1)). The crux of plaintiff's argument was that since section 28—2(a)(1) removed from the definition of a gambling device "coin-in-the-slot operated mechanical devices * * * which returns to the player thereof no money, property or right to receive money or property," the purpose of curbing gambling could no longer be achieved by regulating coin-operated amusement devices.

■■■ Repeals by implication occur only when the repugnancy between the two statutes is clear and reconciliation is impossible. (*City of Chicago v. Wickey* (1954), 4 Ill. 2d 423, 425-26, 123 N.E.2d 335.) Such is not the situation here. Plaintiff's argument presumes that the only purpose sought by the regulation of coin-operated amusement devices is the elimination of gambling. As the record shows, referred to later in this opinion, the purpose of Ordinance No. 75—0—16 is to reduce the incidence of juvenile crime. Therefore, in light of the village's purpose in adopting the ordinance, we find no repugnancy between these two statutes and find plaintiff's argument without merit. (*Cf. American Shuffleboard & Music Corp. v. City of Springfield* (4th Dist. 1976), 40 Ill. App. 3d 745, 748, 353 N.E.2d 1.) Having concluded that the village had the authority to adopt Ordinance No. 75—0—16, it must now be determined whether this power was validly exercised.

## II.

■■■ Plaintiff's assertion that it possesses a liberty and property right in the premises it leased and the business it seeks to pursue is well taken.

(*People v. Brown* (1950), 407 Ill. 565, 572, 95 N.E.2d 888; *Bailey v. People* (1901), 190 Ill. 28, 33, 60 N.E. 98.) Plaintiff's assertion that the application of this ordinance to it would effectively prohibit the operation of its business at that location is also apparently true. However, a valid exercise of the police power supercedes these private rights (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 328, 265 N.E.2d 640), and once an ordinance is found to reasonably relate to the public health, safety, or general welfare, the fact that it prohibits rather than merely regulates is of no importance (*Greyhound Lines, Inc. v. City of Chicago* (1st Dist. 1974), 24 Ill. App. 3d 718, 730, 321 N.E.2d 293). In order to constitute a valid exercise of the police power, two criteria must be met: (1) the ordinance must tend in some degree to prevent offenses or preserve the public health, morals, safety, or general welfare (*Village of Atwood v. Otter* (1920), 296 Ill. 70, 80, 129 N.E. 573), and (2) the means chosen must be reasonably necessary for the accomplishment of the intended purpose and not unduly oppressive (*Chicago Allis Mfg. Corp. v. Metropolitan Sanitary District* (1972), 52 Ill. 2d 320, 327, 288 N.E.2d 436).

■■ In determining whether these criteria have been met, we must take into consideration the object to be accomplished, the means chosen for its accomplishment, and all existing conditions and circumstances. (*Troy v. Village of Forest Park* (1925), 318 Ill. 340, 343, 149 N.E. 281.) However, as the defendants argue, the provisions of Ordinance No. 75—0—16 in issue are clothed with presumptive validity which must be rebutted by clear and affirmative evidence that their adoption constitutes arbitrary, capricious, and unreasonable municipal action; that there is no permissible interpretation which justifies their adoption; or that they will not promote the safety or general welfare of the people of the village. (*First National Bank v. County of Lake* (1955), 7 Ill. 2d 213, 225, 130 N.E.2d 267.) Therefore, the only question is whether the plaintiff met its burden of proof in challenging the presumptive validity of this ordinance. We find that it did not.

■■ Although it was unnecessary for the defendants to present any evidence to establish that the ordinance would remedy any evil (*Greyhound Lines, Inc. v. City of Chicago* (1st Dist. 1974), 24 Ill. App. 3d 718, 726, 321 N.E.2d 293), the defendants presented extensive testimony establishing that the ordinance was intended to reduce the incidence of juvenile crime in the village. Police Officer Kosik and the village president (a village trustee at the time the ordinance was adopted) both testified that the operation of the North Riverside Shopping Center in which plaintiff proposed to operate its business had caused a great increase in the incidence of juvenile crime. Officer Kosik further testified that in his opinion the ordinance was an effective tool for police officers to curb this rapidly increasing problem.

Although plaintiff suggests that the defendants had an improper

motive in adopting the ordinance, plaintiff offered no evidence as to what this improper motive was or might have been. The record shows that the plaintiff sent representatives to a village meeting to explain its business and its policies prior to the adoption of the ordinance. When questioned as an adverse witness the village president stated that he recalled the presentation, but that he could not recall the substance of it, or who presented it. He also stated that the ordinance had been discussed prior to its adoption, but that he could not recall the substance of the discussions or which particular trustees participated in them. However, despite these somewhat equivocal responses, the village president later flatly stated that the ordinance had not been adopted with the intent to exclude the plaintiff's business from the village. Our supreme court has frequently said that the courts have no right to inquire into the motives of a legislative body nor into the wisdom or expediency of legislative acts. (*People ex rel. Shaner v. Chicago, Burlington & Quincy R.R. Co.* (1924), 314 Ill. 445, 448, 145 N.E. 647.) In light of this denial of an improper motive, the presumption and evidence of a valid purpose for its adoption, and the lack of evidence to rebut this presumption, we find that the plaintiff failed to meet its burden of showing that the ordinance was not adopted to promote the safety and general welfare of the people of the village.

However, it remains to be determined whether the plaintiff presented sufficient evidence for the trial court to conclude that limiting the number of amusement devices in each establishment, prohibiting minors and persons under 18 years of age from operating these devices, and prohibiting free replays were not reasonable means of attaining the intended purpose of the ordinance. Upon searching the record, we find again that the plaintiff failed to meet its burden of proof, and that therefore the trial court's findings and rulings are against the manifest weight of the evidence.

### A.

Section 2—11.3 provides that only one license for every 500 square feet and a maximum of 10 licenses for each premise may be issued. As the facts indicate, plaintiff's application for 40 licenses for its 2,068 square feet of space was rejected by the village on the ground that it did not comply with this section of the ordinance. Defendants assert that the record is devoid of any evidence establishing the invalidity of section 2—11.3. A review of the testimony presented by the plaintiff supports this assertion.

Plaintiff presented four witnesses at trial. Plaintiff's first witness was Jules Milman, the president of Aladdin's Castle, Inc., who testified generally to the plaintiff's operations in other parts of the country and Canada, to the lease entered into with Riverside Mall Associates, to

plaintiff's ability to persuade other city councils to rezone or reclassify its operations to avoid similar ordinances, and to the presentation made to the village trustees prior to their adoption of Ordinance 75—0—16. Milman also identified typical pictoral representations of plaintiff's operations, the proposed site within the North Riverside Shopping Center, and the floor plan of this site. Although he asserted that 40 was a reasonable number of machines for plaintiff's premises, Milman acknowledged on cross-examination that the floor plan depicting these 40 machines in the proposed amusement center was not drawn to scale.

Robert Cole, the real estate broker who had represented the plaintiff in its negotiations with the Riverside Mall Associates and who had placed plaintiff's operations in other shopping centers, merely testified that in his opinion the plaintiff has a good business reputation. The village president's testimony related solely to the discussions and meetings surrounding the adoption of the ordinance and the defendants' objective. We find nothing in these witnesses' testimony to support the trial court's finding that section 2—11.3 was an arbitrary and unreasonable means of attaining this objective.

With respect to the validity of section 2—11.3, there was testimony provided by Dr. Harris Berenbaum, a clinical psychologist who had observed one of the other plaintiff's centers, and the testimony of Dr. Thomas Barrett, the defendants' clinical psychologist. Dr. Barrett testified that he also had visited one of plaintiff's centers, and that he considered it to be attractive to minors; that in his opinion the operation that the plaintiff proposed in North Riverside would cause crowding which in turn would cause modeling of antisocial behavior and "deindividuation."[2] He described "deindividuation" as the loss of responsibility for one's actions and stated that this could ultimately lead to an increased propensity to commit crimes. Although Dr. Barrett acknowledged that these phenomena have both negative and positive aspects, he stated that the negative aspects would manifest themselves in minors in the atmosphere created by plaintiff's business. This testimony buttressed that of Officer Kosik who had stated that the ordinance was a proper tool for police officers because a center devoted mainly to youths would result in crowding and all of the problems that go along with it. Dr. Berenbaum acknowledged that although he shared a different viewpoint than Dr. Barrett, each represented an acceptable school of thought.

■■ Plaintiff has shown only that there is a fair difference of opinion as to whether section 2—11.3 provides a reasonable means of attempting to reduce the incidence of juvenile crime in the village. This fair difference of opinion is insufficient to overcome its presumptive validity. (*Dean Milk*

---

[2] The word "deindividuation" was used by the witness. This word does not appear in Webster's Third New International Dictionary (1971).

*Co. v. City of Chicago* (1944), 385 Ill. 565, 578, 53 N.E.2d 612.) The plaintiff did not present a scale drawing of the floor plan or testimony as to the dimensions of the machines proposed for the center. Without such pertinent information the testimony of Dr. Berenbaum and Milman was indefinite and meaningless. Therefore, the trial court's acceptance of Dr. Berenbaum's opinion and Mr. Milman's bare assertion that 40 machines were reasonable was not justified. We find that the plaintiff failed to meet its burden of proof, and that the trial court erred in finding section 2—11.3 unreasonable.

### B.

■■ The defendants' cross-examination of Milman established that if a player had a high score he would get an extra minute or two of time. Therefore, we conclude that the plaintiff allowed free replays on the basis of skill within the meaning of section 2—11.9.

Plaintiff's petition challenges the constitutionality of sections 2—11.3, 2—11.9, 2—11.10, and 2—11.11. However, in opening argument to the trial court, plaintiff asserted that there were only three restrictions complained of, *i.e.*, the age restriction, the space restriction, and the maximum number of machines per establishment contained in sections 2—11.10 and 2—11.3 respectively. In closing argument, plaintiff asked the court to declare either the entire ordinance or only sections 2—11.3 and 2—11.10 void. As a result, defendants assert that the plaintiff failed to present any evidence at all to rebut the presumptive validity of section 2—11.9. Plaintiff's brief asserts that since it was shown that there were no adverse effects on minors and persons under 18 from playing these devices, it could be concluded that permitting replays would not alter this effect or the lack thereof. We find that there is no evidence to support plaintiff's conclusion, and no evidence challenging the validity of section 2—11.9.

Therefore, plaintiff failed to meet its burden of proof, and the trial court erred in finding section 2—11.9 void as applied to the plaintiff.

### C.

Section 2—11.10 provides that no proprietor shall permit minors and persons under 18 years of age to play single and multiple play machines. To support its argument that this section is unreasonable, plaintiff again relied on the testimony of Dr. Berenbaum. Although Dr. Berenbaum testified that he could conceptualize no adverse effects on persons under 18 from playing coin-operated amusement devices in an atmosphere such as plaintiff's, we find that this testimony was sufficiently rebutted by that of Dr. Barrett. As we noted previously, we cannot inquire into the wisdom of the ordinance and will not search to find it unreasonable

merely on the basis of a fair difference of opinion. *Dean Milk Co. v. City of Chicago* (1955), 385 Ill. 565, 578, 53 N.E.2d 612.

Furthermore, we recognize that the regulation of the activities of minors for their general welfare is a well established function of the State and other governmental bodies such as the defendants. Examples of such accepted regulations are the curfew statute (Ill. Rev. Stat. 1977, ch. 23, par. 2371) which was held to be a reasonable effort by the legislature to deal with the problem of juvenile delinquency (*People v. Chambers* (1976), 66 Ill. 2d 36, 360 N.E.2d 55); the motor vehicle licensing statute which prohibits the issuance of driver's licenses to persons under 18 years of age (Ill. Rev. Stat. 1977, ch. 95½, par. 6—103); and the dram shop statute which prohibits the sale of alcoholic beverages to persons under 21 and prohibits the sale of beer and wine to persons under 19 (Ill. Rev. Stat. 1977, ch. 43, par. 131(a)).

■■ In our opinion, Ordinance No. 75—0—16 and section 2—11.10 thereof represent a similar legitimate exercise of the village's police power to promote the general welfare of minors and the safety of the general public by attempting to reduce the incidence of juvenile crime. Plaintiff has presented no evidence to the contrary. Therefore, we again find that the trial court's findings and rulings were against the manifest weight of the evidence.

### III.

Although not affecting our decision, we feel it necessary to comment on the variation between the relief sought by the plaintiff and the judgment entered. This cause was originally styled as a petition for the issuance of a writ of mandamus. As noted previously, this relief was denied and declaratory relief granted in its stead.

We recognize that the prayer for relief does not limit the relief available (Ill. Rev. Stat. 1977, ch. 110, par. 34), and that the court may grant any affirmative relief to which the parties are entitled based on the pleadings and proofs (Ill. Rev. Stat. 1977, ch. 110, par. 50). However, we also point out that a pleading may be amended at any time before or after judgment to conform the pleadings to the proofs. (Ill. Rev. Stat. 1977, ch. 110, par. 46(3).) Furthermore, the Mandamus Act specifically allows the plaintiff to amend the pleadings when the court determines that the plaintiff has established that he is entitled to relief but has sought the wrong remedy. Ill. Rev. Stat. 1977, ch. 87, par. 12.

■■ In view of the fact that mandamus proceedings and declaratory judgment proceedings are not in all instances governed by the same procedural rules (Ill. Rev. Stat. 1977, ch. 110, par. 1) and provide two distinct statutory remedies (Ill. Rev. Stat. 1977, ch. 110, par. 57.1, and Ill. Rev. Stat. 1977, ch. 87, pars. 1-13), the trial court should not have entered

judgment for declaratory relief without first requiring the plaintiff to amend its pleadings.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Reversed.

STAMOS, P. J., and BROWN, J., concur.